## THE PITTSBURG AND CONNELLSVILLE RAILROAD COMPANY *vs.* JAMES M. ANDREWS.

*Contributory Negligence — When the Court should instruct the Jury, that a particular act is Negligence — Province of the Jury — Measure of Damages — Admissible Evidence to Impeach a Witness.*

If a passenger of mature years, voluntarily or inattentively projects his elbow or arm out of the window of a railroad car in which he is travelling, and it is injured by coming in contact with a freight car standing on a siding near the main track of the railroad, he is not entitled to recover damages for such injury from the railroad company. The placing of his arm out of the window, is an act of contributory negligence on his part, and the Court should so instruct the jury, as matter of law, notwithstanding the company may have been guilty of negligence in permitting the car on the siding to be placed too near the track of the passing train.

But where in an action against the railroad company to recover damages for such injury, there is a conflict of testimony as to how the plaintiff's arm came to be thus exposed, whether as stated by him, or by the witnesses for the defence, this is a question of fact to be determined exclusively by the jury.

In an action to recover damages for injuries received by the plaintiff while travelling in a car over the railroad of the defendant, the jury in estimating the damages, are to consider the health and condition of the plaintiff before the injuries complained of, as compared with his then condition in consequence of such injuries, and whether they are in their nature permanent, and how far they are calculated to disable him from engaging in those business pursuits, for which, in the absence of such injuries he would have been qualified; and also the physical and mental suffering to which he has been subjected by reasons of his injuries, and to allow such damages as in their opinion will be a fair and just compensation for such injuries.

Where a witness is asked on cross-examination if he had a certain conversation with a person named, and denies it, the deposition of the person with whom

the alleged conversation took place, is admissible to impeach the witness, notwithstanding it was taken under a commission at the execution of which the witness sought to be impeached was not examined.

APPEAL from the Circuit Court for Frederick County.

This suit was instituted in the Circuit Court for Allegany County, by the appellee against the appellant, and on the suggestion and affidavit of the latter, it was removed to the Circuit Court for Frederick County, where it was tried. The case is stated in the opinion of this Court.

*First Exception.*—Stated in the opinion.

*Second Exception.*—The plaintiff offered three prayers, the first of which only, as follows, was granted, the others were rejected :

1. That if the jury find from the evidence in the cause that the plaintiff was a passenger on the cars of the defendant, as stated in the declaration in the cause, and that he received the injury complained of while so on said cars, then the presumption is that the injury resulted from the negligence of the defendant, and the plaintiff is entitled to recover, unless the defendant shows that said injury did not result from its negligence.

The defendant offered eleven prayers, the sixth of which only was granted, the others substantially as follows, were rejected :

1. That there is no evidence in this case legal and sufficient to show that the injury to the plaintiff was not received in consequence of his own contributory negligence, and that he is therefore not entitled to recover.

2. That the plaintiff is not entitled to recover in this case, because his injury was received by his own negligence, directly contributing to said injury.

3. That if the jury shall believe from the evidence in the cause, that on the 18th of July, 1872, the plaintiff purchased a ticket at McKeesport, in the State of Penn-

Pittsburg & Connellsville R. R. Co. vs. Andrews.

sylvania, to travel on the defendant's road to the city of Cumberland, in the State of Maryland, for which he paid the amount charged, and thereupon entered the cars of the defendant for the purpose of proceeding to the city of Cumberland, over the road of the defendant, known as the Pittsburg and Connellsville Railroad ; and shall further believe, that between the hours of ten and eleven o'clock, P. M., at a point one-fourth to one-half mile east of the town of Connellsville, the train of cars containing the car in which the plaintiff was riding, came in collision with a freight car standing near the main track of said railroad, and that the plaintiff was struck on the arm or elbow, by the same coming in contact with the said freight car, and thereby injured ; and if the jury shall believe from the evidence, that a few minutes prior to the time of said accident by which the plaintiff was injured, he was in a drowsy condition, with the window of the car in which he was seated opened, with his arm lying on the window-sill, and his elbow protruding beyond the window and outside of said car, and his head resting on his arm, and in that position was aroused by the conductor, asked for his ticket, taken by the shoulder and drawn in said car by the conductor, and was warned by him that it was dangerous to have his head and arms lying out of the open window, that he might get his head knocked off ; and shall further believe, that after being thus warned of his danger, the plaintiff resumed said position with his arm out of the open window, and his elbow protruding beyond it, and with his head resting on his arm; and if the jury shall further believe that the engine of the defendant, propelling the said train of cars containing the car in which the defendant was so lying, came into collision with a freight car standing on a siding near the main track of the railroad of the defendant, and that said engine knocked said freight car up said siding, sufficient for the train of cars to pass uninjured, and that the

arm of the plaintiff was injured in consequence of its protruding out of said window and striking against said freight car, as the car in which the plaintiff was lying was passing the freight car, then that these acts on the part of the plaintiff constituted such want of ordinary care and prudence as directly contributed to the injury of the plaintiff, and does not entitle him to maintain an action to recover damages for such injury, and their verdict must be for the defendant, even though they may believe that the defendant was equally guilty of negligence.

4. That if the jury shall believe from the evidence that the plaintiff was injured by his arm or elbow striking against a freight car, standing near the main track of the defendant's road, on which the car in which the plaintiff was riding was passing; and shall further believe from the evidence that the plaintiff directly contributed to said injury by the want of some ordinary care and caution on his part while passing said freight car, then the plaintiff is not entitled to recover in this action, and their verdict must be for the defendant, even though they shall believe that the defendant was equally guilty of negligence.

5. That if the jury believe the facts stated in the foregoing prayers of the defendant, and that the accident complained of, whereby the plaintiff was injured, would have been avoided by the exercise of ordinary care and caution on his part, he is not entitled to recover in this action, and their verdict must be for the defendant, even though they shall believe that the defendant was equally guilty of negligence.

7. That if the jury shall believe from the evidence in the cause that the plaintiff, at the time of the alleged accident, was sitting in one of the cars of the train to which the accident occurred, with his arm or elbow protruding from the window, and that a few minutes previous to the said accident he had been cautioned by the conductor,

who had charge of the train, that it was unsafe for him to maintain said position, and that the conductor requested him not to project his arm from said window, and that notwithstanding said injunction and caution, he afterwards resumed said position, disregarding said injunction and caution, and that the car in which the plaintiff was seated, was in no way injured by the box freight car on the siding, then he was guilty of concurrent negligence, and co-operated to produce the injury complained of, and is not entitled to recover.

8. That if the jury shall believe the facts stated in the defendant's third and seventh prayers ; and shall further believe from the evidence in the cause, that the plaintiff was under the influence of liquor, and that the shock produced by the engine striking said box freight car was not sufficient to throw him from his seat and knock him against divers portions of the car, then he was guilty of the want of ordinary care and prudence, and that such want of ordinary care and prudence on his part, directly contributed to the injury complained of, and therefore he is not entitled to recover.

9. That if the jury shall believe from the evidence in the cause, that after the collision between the engine and the box freight car, the car in which the plaintiff was seated passed the said freight car without injury, and that he would not have been injured if he had not protruded his arm out of the window of the car in which he was seated, then that such protrusion of his arm was concurrent negligence on his part, and he is not entitled to recover.

10. That if the jury shall believe from the evidence in the cause, that after the collision between the engine and the box freight car, the car in which the plaintiff was seated passed the said freight car without injury, and that he would not have been injured if he had not protruded his arm out of the window of the car in which he was

seatéd, then that such protrusion of his arm was concurrent negligence on his part, and that on account thereof he is not entitled to recover, notwithstanding the jury may believe that the defendant was guilty of negligence in permitting said box freight car to stand where it would necessarily produce a collision.

11. That if the jury shall believe from the evidence in the cause, that by the collision between the engine and the box freight car, the latter was driven so far from the main track on which was the car in which the plaintiff was traveling, and passed over the track without injury to the car or the passengers inside thereof, and that the plaintiff would not have been injured if his arm had not been protruding beyond the window of said car, then he is not entitled to recover, unless the jury shall believe that the shock was so violent that it drove his arm out of the window, and that he had not time to withdraw it before he received his injury.

The Court (LYNCH and BOUIC, J.) instructed the jury as follows:

1. That if they shall find from all the evidence in the cause, that the plaintiff was a passenger on one of the passenger cars of the defendant, as stated in the declaration in this cause, and that the train of said defendant, to which said car was attached, was moving on the main track of the defendant's road, and while so moving collided with an empty car of defendant, which the defendant had permitted to stand upon or so near said main track that said train could not pass without striking it, and that the injury complained of was caused by said collision and by said empty car being too near to said main track; and shall further find that there was a want of ordinary care and prudence on the part of the defendant in the way in which said train and said cars were managed or arranged, and that such want of ordinary care and prudence directly caused the injuries complained of in this cause,

then the plaintiff is entitled to recover; provided the jury find, under all the facts and circumstances in evidence, that the plaintiff did not contribute to such injuries by want of ordinary care and prudence on his part; but if the jury shall find from all the evidence in the cause that the accident or injuries in question, would have been avoided by the exercise of ordinary care, caution and prudence on the part of the plaintiff, then the plaintiff cannot recover.

2. That if the jury find for the plaintiff, then, in estimating the damages, they are to consider his health and condition before the injuries complained of, as compared with his present condition in consequence of the said injuries, and whether they are in their nature permanent, and how far they are calculated to disable him from engaging in those business pursuits for which, in the absence of such injuries, he would have been qualified; and also the physical and mental suffering to which he had been subjected by reason of the said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which he has suffered.

To the ruling of the Court in granting the first prayer of the plaintiff, and in rejecting all the prayers of the defendant, save the sixth, and in giving instructions to the jury in lieu thereof, the defendant excepted.

The jury rendered a verdict in favor of the plaintiff for $6,000, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRANT, MILLER and ALVEY, J.

*John K. Cowen* and *Thomas J. McKaig*, for the appellant.

A proper foundation was laid for the introduction of Welsh's testimony. The Act of Assembly which allows

the introduction of the testimony of the plaintiff, works badly enough, without holding that you never can show by testimony taken under a commission, that he is not telling the truth, unless you have the witness present at the trial.   If the testimony of Welsh was legal and proper, "as a declaration of the plaintiff as to the manner in which the said injury occurred," it was proper "for impeaching" his testimony—that is, for the purpose of showing he did not tell the truth—that his statement was unworthy of belief.   1 *Greenleaf on Ev.*, sec. 462 ; *Franklin Bank vs. Penn., Dele. and Md. Steam Navigation Company*, 11 *G. & J.*, 35 ; *Matthews & Zollikoffer vs. Dare & McClure*, 20 *Md.*, 269.

The Court erred in granting the plaintiff's first prayer, in that it directs the jury that the plaintiff is entitled to recover, if they shall find that "he received the injury while on said cars, unless the defendant shows that said injury did not result from *its* negligence."   There was abundant evidence to show that the injury was the result of the plaintiff's own negligence.   If the jury should have found, as they well might have found, "that the plaintiff by his *own negligence contributed to the injury*," still, by this instruction the plaintiff was entitled to recover.   This is directly contrary to the ruling of this Court in the case of *Lewis vs. The Balto. and Ohio Railroad Company*, 38 *Md.*, 588 ; *Tuff vs. Warman*, 94 *E. C. L. Rep.*, 583.

The defendant's first and second prayers ought, one or both, to have been granted, because the testimony of various witnesses show that the plaintiff was under the influence of liquor—that his arm, at the time of the accident, was out of the window—that he was drowsy or sleeping, and did not know what position he was in at the time of the accident, and that the jar was not sufficient to force his arm out of the window, and that if it did so, he had time to have recovered his position before the cars passed a hundred and fifty feet, if he were in the

condition he testifies he was. His own statement is improbable and contradicted, as it is—is not legally sufficient to entitle him to recover. *Thistle, et al. vs. The Frostburg Coal Co.*, 10 *Md.*, 129 ; *Lewis vs. The Balto. and Ohio R. R. Co.*, 38 *Md.*, 588.

The defendant's third, fourth and fifth prayers are based on the negligence of the plaintiff. They ask the Court to say, that if the jury shall find from the evidence that the plaintiff's arm was injured in consequence of its being protruded out of the open window, that such protruding of the arm out of the window was such want of ordinary care and prudence as directly contributed to the injury of the plaintiff, and that prior to the injury the conductor had warned him that it was dangerous to have his head and arms lying out of the window, or, in other words, if the jury shall believe the facts set forth in the third prayer, and that the plaintiff's arm was injured in consequence of its being protruded from or out of the window, that this act on the part of the plaintiff constituted such a want of ordinary care and prudence as to prevent his recovery. *Pitts. and Connl. R. R. Co. vs. McClurg*, 56 *Penn.*, 294 ; *Todd vs. Old Colony and Fall River R. R. Co.*, 3 *Allen*, 18, 29, and 7 *Allen*, 207, 209 ; *Holbrook vs. Utica and Schenectady R. R. Co.*, 12 *N. Y.*, 236, 244 ; *Indianapolis and Cincin. R. R. Co. vs. Rutherford*, 29 *Ind.*, 82 ; *Louisville and Nashville R. R. Co. vs. Sickings*, 5 *Bush*, 1.

The refusal to grant the defendant's fourth prayer was as much as to direct the jury that no want of ordinary care and caution on the part of the plaintiff was sufficient to prevent his recovery, if the jury believed the defendant was equally guilty of negligence. This is contrary to the ruling of this Court in several cases. Here the act of *carelessness* was the *protruding his elbow out of the window*, a *plain act of carelessness* on the part of the plaintiff, and the Court was asked to say, that in law,

it was such contributory negligence as will prevent a recovery.

The fifth prayer varies the proposition to this view. That if the jury shall believe the facts stated in the third and fourth prayers, and shall further believe that the accident complained of would have been avoided by the exercise of ordinary care and caution on the part of the plaintiff, then he was not entitled to recover.

These three prayers ought to have been granted. *Lewis vs. The Balto. and Ohio R. R. Co.*, 38 *Md.*, 588.

The defendant's seventh prayer asked the Court to instruct the jury, that if they found the facts contained in the prayer, the plaintiff was not entitled to recover. Those facts, if found by the jury, under the decision of this Court in the case of *Lewis vs. The Baltimore and Ohio Railroad Company*, would entitle the defendant to the instruction asked.

The defendant's eighth, ninth, tenth and eleventh prayers, under the rulings of this Court, ought to have been granted, because they simply state the proposition of the *contributory negligence* of the plaintiff, in different forms, all coming under the same rule, as laid down in the decisions of this Court—all the facts to be found by the jury, being *plain acts of carelessness* on the part of the plaintiff, and in law contributory negligence, which would prevent a recovery. The decision of this Court in the case of *Lewis vs. The Baltimore and Ohio Railroad Company*, is conclusive against the ruling in this case.

The instructions of the Court were no sufficient substitute for the defendant's prayers. The instructions contain general principles that amount to nothing, when the facts proved in the case are examined. The Court instructs, that "the leaving the car upon or so near the main track, that the train could not pass without striking it," was an act of negligence on the part of the defendant, but refuses to instruct, that a "*plain act of careless-*

*ness* " on the part of the plaintiff was negligence in law, which would prevent his recovery. The Court's instruction says, " *directly caused the injuries;* " no jury was ever empannelled that could tell what is meant by " the direct cause," or " *proximate cause,* " or " *remote cause;* " and lawyers generally do not seem to have advanced far beyond the intelligence of the jury, in defining the meaning of those meaningless phrases. A passenger puts his head out of the window, and a post knocks his head off, which was the " *direct cause?* " which the " *proximate cause?* " or which the remote cause, the putting out the head, or the post? Such instructions did not meet the circumstances or facts of this case, and only tended to mislead the jury. The Court were asked, and refused to instruct the jury, that a " *plain act of carelessness* " on the part of the plaintiff was, *in law,* such contributory negligence, as should prevent a recovery.

The several prayers of the defendant, which declared that the placing of the arm of the plaintiff outside of the window, after notice of the danger of such a position, was in law an act of negligence, should have been granted by the Court.

*J. H. Gordon,* for the appellee.

The party desiring to impeach the credit of a witness, must give the witness the best and every oportunity to explain any discrepancy that may arise between his testimony at the trial and his statements prior to it; the defendant did not lay a proper foundation, consequently they could not bring in the evidence as impeaching the credit of the plaintiff. 1 *Greenleaf on Ev.,* 583, 584 and 585; 1 *Starkie's Evidence,* 213 and 214; *Conrad vs. Griffey,* 16 *Howard,* 38; *Conrad vs Griffey,* 11 *Howard,* 480; *Whiteford vs. Burckmyer and Adams,* 1 *Gill,* 127.

The Court below were right in granting the first prayer of the plaintiff, who was injured upon the train of the

defendant, where he was by a contract for conveyance, and being hurt while so upon the train, it is but fair, indeed we must presume that the defendant was negligent, and the necessity of showing otherwise rests upon the defendant. *Worthington vs. B. & O. R. R.*, 21 *Md.*, 275, 282 ; *Stokes vs. Saltonstall*, 13 *Peters*, 181 ; *Stockton vs. Frey*, 4 *Gill*, 414.

The Court was right in rejecting the defendant's first prayer, upon the ground that it made the judges decide upon the fact of negligence contributory and concurrent upon the part of the plaintiff, which must properly be left to the jury as a matter of fact. *Adams vs. Capron, et al.*, 21 *Md.*, 205 ; *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 127.

Even supposing the judges to have such unlimited power of instruction, which they have not, the act of the plaintiff, as proved by the defendant, is not in law negligence, and if it be, it must be the proximate cause of the injury, else it will be no bar to a recovery. *Chicago & Alton R. R. Co. vs. Pondrom*, 51 *Illinois*, 333 ; 2 *Redfield on Railways*, 174.

The appellant's fourth prayer was properly rejected, upon the ground that contributory negligence is no bar to recovery when it is not the direct and proximate cause of the injury, and when the greatest possible amount of care is required of the defendant. 2 *Redfield on Railways*, 174 ; 2 *Parsons on Con.*, 219 ; *Price's Case*, 29 *Md.*, 420 ; *Chicago & Alton R. R. Co. vs. Pondrom*, 51 *Ill.*, 333 ; *Derby's Case*, 14 *Howard*, 468 ; *Kelley's Case*, 24 *Md.*, 271 ; *Dougherty's Case*, 36 *Md.*, 366 ; *Fitzpatrick's Case*, 35 *Md.*, 32 ; *Fazenbaker's Case*, 37 *Md.*, 156.

The defendant's fifth prayer was properly rejected by the Court below, upon the same ground of the proximate cause of the injury and contributory negligence being no bar to the action.

The seventh prayer was properly rejected upon two grounds: First, that the notice or admonition must be of a particular danger; and, second, that the negligence of the plaintiff must be the direct cause of the injury to be a bar to a recovery. *Chicago & Alton R. R. Co. vs. Pondrom*, 51 *Illinois*, 333; *New Jersey Railroad Co. vs. Kennard*, 9 *Harris*, 203.

The defendant's eighth prayer was properly rejected, because the degree of violence is not material where it is caused by the defendant and sufficient to work an injury to the plaintiff; the granting of this prayer would also have taken away and relieved the defendant from the necessity of the utmost care and caution in its power, which is manifestly against the first principles of law and justice; the contract is made for a safe carriage, and this requires the utmost circumspection on the defendant's part; otherwise, for any lack of care or negligence, it is liable if it works an injury to the plaintiff, either to his person or property.

The defendant's tenth and eleventh prayers are the same in meaning, and almost the same in substance, while the principles involved in them are identical; they were properly rejected, because the plaintiff is not *prima facie* to be considered negligent in permitting his arm, or even his head, to project from the window of the car, a universal practice among travellers, and a practice unprovided for by railroad companies, and though by some it may be considered negligence, it is, notwithstanding, no bar to a recovery, unless it is the direct cause of the injury

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellee to recover damages for injuries received while being carried as a passenger over the appellant's railroad on the 18th of July, 1872. He purchased a ticket from McKeesport to Cumberland, and when injured was sitting in the second

car from the engine. The train left Connellsville between ten and eleven o'clock at night, and when about a half a mile from that station, while going at less than half speed, struck a freight car which was left standing on a siding in a position so near to the switch, as not to permit the passage of the train without striking it. The locomotive struck the end of the freight car, knocked it aside, and the train passed without any other collision, except a slight scratch to the sleeping car, which was about nine inches wider than the others. No one was hurt except the plaintiff, whose right arm was broken in several places and permanently injured. The car in which he was riding did not come in contact with the freight car, and it is admitted his arm at the time was out of the window. He was a man of mature years, and it is perfectly clear he would have received no injury if his arm had not been in this position. As to how it came to be thus protruded, the testimony is conflicting, but it must have occurred either as stated by the plaintiff himself, or as stated by the witnesses for the defendant. The plaintiff testifies that he was sitting with his elbow inside of the car on the window-sill, and the jar pitched him forward, and in attempting to catch himself his arm went out of the window and was caught between the two cars; that the window was up when he entered the car; that he did not lie with his elbow out of the window or lay his head on his arm, was not asleep at the time, and does not recollect that the conductor came to him when taking up tickets, and cautioned him it was dangerous to lie in that manner, or pulled him out of the window. On the other hand, the testimony of the conductor and of a fellow passenger in the same car, is to the effect that a few minutes before the accident, when the conductor came through the car taking up tickets, the plaintiff was lying in his seat with his arm out of the window, and his head resting on his arm, that the conductor took hold of him,

shook him and pulled him out of the window, and told him to take his head in as he would get it knocked off; that his elbow must from his position at the time of the accident have extended out over the window sill, and the jar was so slight that it could not have thrown his arm out of the window.

The appellant insists the jury should have been instructed that if they found the accident occurred as stated by the witnesses for the defence, then there was such want of ordinary care and prudence on the part of the plaintiff, directly contributing to the injury, as to prevent a recovery, notwithstanding the negligence of the defendant, and several prayers were presented to that effect, which were refused. Whether such an instruction ought to have been given, is the main question in the case.

The general rule is, that negligence is a question for the jury to decide upon all the facts and circumstances of each case, but while this is the general rule, cases may and sometimes do occur where the Court is required to declare some plain act of carelessness on the plaintiff's part, to be in law, such contributing negligence as will prevent a recovery, or, on the other hand, where there is no proof of negligence on the part of the defendant, or where such proof is so slight and inconclusive in its nature, as to demand from the Court an instruction, as to its legal insufficiency to prove negligence, in order to prevent the jury from indulging in wild speculation or irrational conjecture. *Shipley's Case*, 31 *Md.*, 370. The power of the Court thus to interpose, has been uniformly asserted by the Appellate Court of this State, as well as by the Courts of England, and of our sister States, though instances calling for its exertion are comparatively rare. We have sustained its exercise in the two recent cases of *The Baltimore City Passenger Railway Co. vs. Wilkinson*, 30 *Md.*, 224, and *Lewis vs. The Baltimore & Ohio Railroad Co.*, 38 *Md.*, 588.

Among the numerous accidents that have occurred on Railways, there have been many cases identical or nearly so with the present, and the very question it is our duty now to determine, has arisen, and been decided by the Courts of last resort in other States. The first is that of the *New Jersey Railroad Co. vs. Kennard*, 9 *Harris*, 203, decided in 1853. In that case C. J. GIBSON at *nisi prius* in his charge to the jury, said, "a carrier of either goods or passengers, is bound to provide a carriage or vehicle perfect in all its parts; in default of which he becomes responsible for any loss or injury that may be suffered, provided it happen without negligence or misconduct on the part of the party injured. A carrier of passengers is bound to omit no precaution that may conduce to their safety. He is bound to guard beforehand against every apparent danger that may beset them. The dangers incident to travelling in railway cars are few in comparison with those incident to other modes of travel; but among the most prominent of them, is risk of injury to limbs stuck out of the windows, where the cars are not so constructed as to prevent it. Any one who has travelled by railway, must have observed that even the most careful passengers forget the risk, and unconsciously suffer their elbows to slip out beyond the window-sill. What can the carrier do to prevent this? No more is required than a few metallic rods set in the window perpendicularly or horizontally, or a netting of wire work, or even wooden slats. None of these would materially impede the circulation of air or abridge the comfort of the passengers, while it would make their safety sure. A car without any of these appliances is, to coin a phrase, not *roadworthy*, and a carrier is responsible for any loss that may happen from that cause alone. It is a notorious custom in railway cars, and it is proved to be so by the evidence in the cause, for passengers next to the windows, to rest their elbows on the sills of them; and carriers are bound

to take notice of the customs and habitudes of railway passengers, and to provide for them. If a passenger therefore sits and rides in a car as others generally do, and receives injury from an imperfect construction of it, the carrier is liable for it."

He then told the jury he would leave it for them to say whether the resting of his arm on the window-sill with his elbow outside of it, was contributing negligence on the part of the plaintiff. That charge was affirmed by the Supreme Court in a short *per curiam* opinion, with the reservation that the language of the learned Judge seems to be too broad as a general principle, where he says that " no car is good if the windows are not so constructed as to prevent passengers from putting their limbs through them;" but in its application to a road which in some places is so narrow as to endanger projecting limbs as here, the instruction is proper.

*In Holbrook vs. The Utica & Schenectady Railroad Co.,* 12 *New York Rep.*, 236, decided in 1855, the Judge at the trial was requested by the defendant's counsel to charge the jury as matter of law, that if they found that the plaintiff's arm or elbow was outside of the window of the car when the injury was received, it was an act of negligence, and she could not recover, but he refused to charge on that subject further than he had already done. In the Court of Appeals, the opinion was delivered by RUGGLES, J., who, on that question, says; "In this refusal to charge as requested, I was at first inclined to think there was error, but my brethren are unanimously of opinion that the Judge had already charged the jury *substantially in conformity with the request*, and that he was right therefore in declining to *repeat what he had before stated*. I yield to their judgment and concur in affirming the judgment." From this it is clear the Court was unanimous in opinion that the law of the requested charge was correct.

Next in order of time is the case of *Todd vs. Old Colony, & Fall River Railroad Co.*, 3 *Allen*, 18, decided in 1861, in which the Supreme Court of Massachusetts reversed an instruction which left the question of negligence to the jury, and say: "If the plaintiff was riding in the car with his elbow or arm projecting out of the window, by reason of which he sustained an injury, he was guilty of a want of due care which would prevent him from maintaining his action. Looking at the mode in which railroads are constructed, with posts and barriers which are placed very near to the track on which the cars are to pass, the rapid rate at which trains move, the manner in which cars are made, with seats to accommodate passengers so as to avoid any exposure of the body or limbs to outward objects in passing, we can see no ground on which it can be contended that a person travelling on a railroad is exercising reasonable care in placing his arm in such a position that it protrudes from a window, and may come in contact with external obstructions; certainly if it is a want of due care to attempt to leave a car when the train is in motion, although going at a slow rate of speed, as has been heretofore determined by this Court, it is no less a want of proper care to ride in a car with an arm or leg exposed to collision against passing trains, or the necessary structures on the side of the track. Nor was it the province of the jury to determine, as a matter of fact, whether the plaintiff used due and reasonable care, if it was proved that his arm or a portion of it was outside of the window at the time of the accident. If there was no dispute or controversy about this fact, and the position of his arm was the cause of, or contributed to, the accident, the plaintiff failed to prove an essential element to the maintenance of his action. In such a state of the evidence it was the duty of the Court to decide on its legal effect, and to say to the jury the plaintiff had failed to make out his case." When

the same case again came before the Court in 7 *Allen*, 207, the former decision was reaffirmed, and most emphatically as to the power and duty of the Court in such cases to pronounce upon the legal effect of admitted facts.

Next is the case of *The Pittsburg & Connellsville Railroad Co. vs. McClurg*, 56 *Penn. State Rep.*, 294, decided in 1867. The plaintiff in that case suffered his elbow to project from the window, and it was broken by coming in contact with a car standing on a switch. At the trial the Judge, following the rule in *Kennard's case*, instructed the jury that a passenger on a railway car who has unconsciously suffered his elbow to slip out beyond the window-sill, is not necessarily guilty of negligence, and submitted it to them as a question of fact whether under all the circumstances of the case, the plaintiff in permitting his arm or elbow so to project, was or was not guilty of negligence. This ruling being assigned for error, the Supreme Court carefully considered the question. Their opinion was delivered by C. J. THOMPSON, who says, "we must regard the remark, 'unconsciously suffered his elbow to slip beyond the window-sill,' to mean inattentively. In that sense it was negligently suffered to slip. Of course this was negligence *in se*, unless he was under no obligation to take care of himself. But no case asserts that, and every case the contrary. Out of the omission to do so springs the doctrine of contributory negligence, which defeats a plaintiff, and which is so firmly established as a principle of law, that nobody dreams of doubting it. We have then the case broadly, I think, that negligence is not to be inferred, when injury accrues from an exposure of an elbow, or an arm, out of a car window, if it be not wilfully done. This cannot be maintained on any reasonable principle, we think. When a passenger on a railroad purchases his ticket, it entitles him to a seat in the cars. In the seat

no part of his body is exposed to obstacles outside of the car. He is secure there ordinarily, from any contact with them, where he is thus provided with a seat, safe and secure in the absence of accident to the train, and the carrier has a safe and convenient car, well conducted, and skilfully managed, his duty is performed towards the passenger. The duty of the latter on entering, arises, namely, that he will conform to all the reasonable rules and regulations of the Company, for occupying, using, and leaving the cars, and after doing so, if injury befall him by the negligence of the carriers, they must answer; if he do not so conform, but is guilty of negligence therein, and is injured, although there may be negligence on the part of the carriers, he cannot recover." Reference is then made to several authorities in support of this position, and among others to *Penna. Railroad Co. vs. Zebe & Wife*, 9 *Casey*, 318, where it was held the Company's liability could not be fixed for any injury consequent on a choice of the passenger, in disregard of the provisions made by it for his safety; that it was error to submit the question of the right of the parties to leave the cars at either side to the jury, in the absence of proof or justifying necessity for so doing; that it was not negligence on the part of the Company that they did not by force of barriers prevent the parties from leaving at the wrong side; that people are not to be treated as cattle; they are presumed to act reasonably in all given contingencies, and the Company had no reason to expect any thing else in that case. The opinion then proceeds, "A passenger on entering a railroad car is to be presumed to know the use of a seat, and the use of a window; that the former is to sit in, and the latter to admit light and air. Each has its separate use. The seat he may occupy in any way most comfortable to himself. The window he has a right to enjoy, but not to occupy. Its use is for the benefit of all, not for the comfort alone of him, who

has by accident got nearest it. If, therefore, he sit with his elbow in it, he does so without authority, and if he allow it to protrude out, and is injured, is this due care on his part? He was not put there by the carrier, nor invited to go there, nor misled in regard to the fact, that it is not a part of his seat, nor that its purposes were not exclusively to admit light and air for the benefit of all. His position is, therefore, without authority. His negligence consists in putting his limbs where they ought not to be, and liable to be broken, without his ability to know whether there is danger or not approaching. In a case, therefore, where the injury stands confessed, or is proved to have resulted from the position voluntarily or thoughtlessly taken in a window, by contact with outside obstacles or forces, it cannot be otherwise characterized than as negligence, and so to be pronounced by the Court;" and further: "In the absence of some justifying necessity, or incapacity to take care of himself on the part of the passenger, no one can doubt, I think, from the reason of the thing, in view of the nature of the vehicle used, being a railroad car, that to extend an arm or a hand beyond the window-sill, is dangerous, and is recklessness or negligence. Wherever the facts present such a case singly, and without any controlling or justifying necessity, we think the Court ought to declare the act negligence; and as there was nothing like this shown in the case before us, we think the Court ought not to have affirmed the plaintiff's point. Unconsciously exposing himself did not help the plaintiff's case, as it was not shown that his unconsciousness was not the result of a want of prudent attention to his situation on the part of the plaintiff. It would be a novel answer to the allegation of negligence, to allege that the plaintiff had slept in the position he was in when hurt; and that would be a condition of unconsciousness. Sleeping when due care would require one to be awake, or in dangerous circum-

stances, is negligence, and no answer to the Company can be given to such act. Of course these views are predicated of a case in which there are no facts to qualify or justify the act. It is possible that a state of facts might be found to show an exception to the rule, and where that occurs the rule ceases. But none such appear as this case is presented." The Court then proceed to examine *Kennard's case*, and deliberately overrule it, as well as the charge of C. J. GIBSON therein; and great as is our respect and admiration for the learning and ability of that distinguished jurist, we yet think, the weight of reason and authority is with the decision which has over-ruled his judgment on this question.

The plain doctrine of *McClurg's Case*, is that if a sane person of mature years, while a passenger in a railroad car, without any controlling or justifying necessity or cause for so doing, voluntarily or inattentively protrudes his elbow or arm from the window, and it is injured by coming in contact with any external obstacle or force, it is such a clear act of contributory negligence on his part as will prevent a recovery, and that it is the duty of the Court so to instruct the jury, as matter of law, notwith-standing the negligence of the Company in permitting the obstacle to be placed too near the track of the passing train.

About the same time the Supreme Court of Indiana decided precisely in the same way, in a case involving the same question. *Indianapolis & Cincinnati Railroad Co. vs Rutherford*, 29 *Ind.*, 82, and following these is a decision to the same effect by the Court of Appeals of Kentucky, *Louisville & Nashville Railroad Co. vs. Sickings*, 5 *Bush*, 1. These decisions are approved by Judge RED-FIELD in his note to *McClurg's Case*, in 2 *American Railway Cases*, 552, where he says, " we can entertain no possible question that these later cases are entirely sound, and that *Kennard's Case* was decided upon mistaken

grounds," and adds, "the rule is without exception in all the well considered cases, that the plaintiff cannot recover for any damage he may sustain where his own want of ordinary care contributed directly towards it, however great or extreme may have been the negligence on the part of the defendant."

Opposed to these authorities, there are besides *Kennard's Case*, the two cases of *Spencer vs. Milwaukee & Prairie du Chien R. R. Co.*, 17 *Wisc.*, 487, and *Chicago & Alton R. R. Co. vs. Pondrom*, 51 *Illinois*, 333. The former is directly in point, and presents the opposing views very forcibly. In the latter the decision, as we understand it, was actually rested upon a principle of law established in that State, that where there has been contributing negligence, the negligence of both parties must be *compared*, and if the plaintiff is guilty of negligence, which is slight as compared with that of the defendant, he may recover. Such a principle has never been sanctioned in this State, but the exact contrary is the settled rule here, (*Geis' Case*, 31 *Md.*, 366), and the Illinois Court admit the doctrine is not supported by the weight of authority elsewhere. They refer however to *Kennard's Case*, and to *McClurg's Case*, and think the former the better considered of the two, based on sounder reasons, more in harmony with the analogies of the law, and entitled to more weight. With great respect for the judgments of that learned tribunal, we entertain, and have expressed a different opinion ; we think the latter is better reasoned, as well as supported by the decided preponderance of authority, and have no hesitation in accepting it, with the other cases to the same effect, as containing a correct exposition of the law on this subject.

In our review and citations from the decisions upon this question, (which have been more extended than usual, or perhaps than is necessary), we have noticed those only which are exactly, or nearly identical with the case before

us, and have refrained from making any reference to a large number of others, both in this country and in England, where in similar and analogous cases, the Courts have interposed, and either withdrawn them from the jury, or given to the jury imperative instructions as to the legal effect of facts admitted, or to be found by them.

It follows there was error in the refusal to grant several of the defendant's prayers, and especially the third, seventh and eighth, as well as in the first instruction given by the Court on its own motion. Upon the assumption the jury would find the facts therein hypothetically stated, these prayers of the defendant, though apparently more numerous than the exigencies of the case required, embody each a correct legal proposition. It must be observed, however, that while it is admitted the plaintiff's arm was out of the window at the time of the accident, there is a conflict of testimony as to how it came to be thus exposed, whether as stated by the plaintiff, or by the witnesses for the defence. This question of fact, it is the undoubted province of the jury to determine, and upon the weight of evidence in this respect, it is not our province to express any opinion. The jury therefore having the unquestionable right to give credit to the testimony of the plaintiff, and reject that for the defence, there was no error in rejecting the defendant's first and second prayers. The ninth and tenth prayers need not be critically examined. If they were intended to assert the same proposition contained in the third, seventh and eighth, they were wholly unnecessary; and if their purpose was to announce any legal proposition different from that which we have in this opinion declared, and adopted, then there was no error in rejecting them. We find no error in the rejection of the eleventh prayer. All the law to which the Company was entitled upon the theory of the case which this prayer contemplates, is contained in their sixth prayer, which was granted. Their fourth

and fifth prayers proceed upon the assumption that the jury were to determine the question of contributory negligence, and in that view of the case, the same law was embodied in the first instruction of the Court. It does not follow there was error in the rejection of these prayers, because we have said there was error in this instruction, inasmuch as both assumed the same theory of the case. Upon that theory the Court's instruction gave the Company the benefit of the same law sought by these prayers. No objection was made in argument to the Court's second instruction, on the question of damages, and we do not understand the exception as extending to this ruling. But if it does, there is no error in it. The measure of damages is therein correctly defined according to numerous decisions of this Court on that subject.

The plaintiff's first prayer states the law as announced in *Stokes vs. Saltonstall*, 13 *Pet.*, 181; *Stockton vs. Frey*, 4 *Gill*, 406, and *Worthington's Case*, 21 *Md.*, 275, about which there can, in this State at least, be no doubt, viz: that the occurrence of an accident and injury to a passenger is *prima facie* evidence of negligence in the carrier, and throws upon him the *onus* of rebutting the presumption by proving there was no negligence on his part. But in those cases there was no proof, and no question of contributory negligence in the plaintiff. The Courts in those cases were not dealing with a case like this, in which the right of recovery is affected by, and dependent upon the presence or absence of such negligence. In this case it was error to instruct the jury that the plaintiff is *entitled to recover* upon proof of the injury, unless the Company showed such injury did not result from their negligence, without noticing or instructing them as to the effect of contributory negligence on his part. No doubt the Court intended the last clause of its first instruction as a modification of this prayer, but as the two stand, and upon the assumption there was no error in that given by the

Court, there seems to be a plain inconsistency between them well calculated to confuse and mislead the jury.

The only remaining question in the case, is that presented by the first exception. The plaintiff when under cross-examination as a witness, was asked, "did you or not, on the morning after the accident, have a conversation with David Welsh in front of the Yough House, in which you said, you must have been lying with your arm out of the window, and something struck it, and that was all you knew?" to which witness replied, "he did not know Welsh, and had no such conversation." He was then asked "if he had on the morning after the accident in Connellsville any conversation with any one, in which he said that he must have been lying with his arm out of the window, and something struck it, and that was all he knew?" to which he replied "he had no such conversation with any one." The defendant then for the purpose of impeaching the plaintiff as a witness, offered a part of the testimony of Welsh, which had been taken and returned under a foreign commission, in which he says in answer to an interrogatory whether he had any conversation with the plaintiff about his injury, and if so, state what that conversation was? "I had a conversation with the plaintiff about his injury; he was brought to my house, and I asked him how he got his arm hurt; he said he must have been lying with his arm out of the window, and something struck it, and that was all he knew, until he came to himself." Objection was made to the offer of this testimony for the purpose of impeaching the plaintiff as a witness, which the Court sustained, but admitted the testimony as a declaration of the plaintiff as to the manner in which the injury occurred. To this ruling the defendant excepted.

A majority of the Court are of opinion, there was a sufficient foundation laid for the introduction of impeaching testimony, and that the defendant had the right to

use the testimony of Welsh for that purpose, notwithstanding it was taken under a commission at the execution of which the witness sought to be impeached, was not examined.

*Judgment reversed, and*
*new trial awarded.*

(Decided 29th January, 1874.)

STEWART, J., dissented.