STATE Use of MARY SHARKEY v. THE LAKE
ROLAND ELEVATED RY. CO.

*Contributory Negligence—Injury to Passenger Riding on Foot-board
of Open Electric Car from a Trolley Pole Located Between the
Tracks.*

Deceased was riding in an open car on defendant's electric railway,
sitting at the end of a seat next to the adjoining track. There were
no guards on that side of the car. Poles supporting the wires were
placed at intervals between the tracks. Notices warning passengers
against riding on the platforms, etc., and stating that the car would
stop at cross streets only, were posted in the car. Deceased, who
had frequently travelled on the line, after having made an ineffectual
effort to attract the attention of the conductor, left his seat and got
upon the foot-board on the side of the car, which projected eighteen
inches, while the car was in rapid motion, at some distance from the
stopping place, and was turning around motioning to the conductor,
when he was struck by one of the poles between the tracks and mor-
tally injured. In an action to recover damages, *Held,*

1st. That the deceased was guilty of such contributory negligence, as
a matter of law, as to preclude recovery.

2nd. That it was not shown that the position of the poles between the
tracks was unusual and dangerous in railway construction.

3rd. That it was not negligence on the part of the defendant not to
have a guard-rail on the side of the car next to the poles.

Appeal from the Superior Court of Baltimore City,
where the case was tried before DOBLER, J., without a
jury.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, PAGE and RUSSUM, JJ.

*M. R. Walter* (with whom was *Charles W. Heuisler* on
the brief), for the appellant.

What did Sharkey do? He was on a car open on both
sides, with the full right, under the company's regulations,
to get out on the side he did, with no guards or anything

else there to indicate that there was any danger in his doing
so.   The foot-board was there for the convenience of the
passengers and conductor, to enter or alight, or to pass from
one row of seats to another.   Under these circumstances,
Sharkey; after making several efforts to attract the attention
of the conductor to have him stop the car, rises from his
seat, takes hold with both hands of the two uprights be-
tween the seat he had been occupying and the one in front,
one hand on each, puts his left foot out on the step, still
having the right foot inside the car, turns partly around to
again beckon to the conductor, and while in that position is
struck by the pole supporting the trolley wire.   What neg-
ligence was there in what he did?   His having one foot on
the step involved in itself no danger.   The foot-board did
not give way; he was not thown off by the jostling of the
car.   Had he been on the foot-board on the other side he
would have met with no harm.   It therefore necessarily fol-
lows that the position he had placed himself in was not an
act of negligence in itself at all.   The injury resulted not
from the use of the foot-board, but from the negligent con-
struction by the company of the road by the placing of the
poles in such dangerous proximity to the cars.   There was
no evidence that the deceased had knowledge of this danger;
on the contrary, the Court below sustained the plaintiff's
exception to the defendant's second prayer, because it as-
sumed " that the deceased was familiar with the location of
the tracks and poles."   There was nothing, we respectfully
submit, to justify the Court in ruling *as a matter of law* that
the deceased had been guilty of contributory negligence.
The most the appellee was entitled to was the submission of
the question of fact to the Court sitting as a jury.

   But the appellant claims that there is no evidence in this
case of any contributory negligence on the part of the de-
ceased—none from which a jury could find that he had
knowledge that there was any danger in his placing himself
in the position he was at the time of the accident.   His
whole conduct negatives any such knowledge.   Sharkey

had, furthermore, a right to assume that inasmuch as the cars were open on both sides, and passengers were invited to enter and depart from either side, that the company had not so constructed its road as to endanger the lives of the passengers. The company is alone to blame. Had it placed a guard on the side nearest the poles it would have made an accident, except by the wilful act of the passenger, impossible. Having the road constructed in such a dangerous way, it was the duty of the company to use every reasonable precaution to prevent accidents which they unquestionably in this case failed to do. It was the duty of the company, as was said in the *Swann case* (81 Md. 400), to use the utmost care and diligence, not only in the running and management of the car, but also in the structure and care of the track and in all the subsidiary arrangements necessary to the safety of the passengers. And in the absence of proof that the deceased knew of the dangerous proximity of the poles, there was nothing in the case from which contributory negligence could be found, and the question was, therefore, not involved in the case.

The warning notice has no application to the facts of this case. Sharkey was not riding on the platform and passengers were not prohibited from using the foot-boards. But even it were applicable, there was no proof in the case that the deceased *knew* of the warning.

*E. J. D. Cross* and *Geo. Dobbin Penniman*, for the appellee, but the Court declined to hear counsel for the appellee.

RUSSUM, J., delivered the opinion of the Court.

This is an appeal by the plaintiff below from the rulings of DOBLER, J., sitting in the Superior Court of Baltimore City, without the intervention of a jury, in a suit brought by the appellant, plaintiff below, against the appellee, for the recovery of damages for the death of the husband of the equitable plaintiff, caused by the alleged negligence of the appellee. The appellee runs and operates an electric railway, for the transportation of passengers only, from the

corner of North and Fayette streets, in Baltimore City, to
Roland Park in Baltimore County.   There were two sets of
tracks, running north and south, on Roland avenue, the dis-
tance between which was sixty-one inches.   The wires sup-
plying the electric fluid by which the cars are propelled, are
supported by poles ten inches in diameter, planted between
these tracks.   The car from which this accident occurred
was an open or summer car, and was constructed without
guards, so that passengers could enter or alight on either
side.   It had eight or ten rows of seats running transversely,
and a foot-board, on each side, extending its entire length.
This car projected one foot over the tracks and the foot-
board six inches, additional, making the entire projection
eighteen inches.   On the morning of September 11th, 1894,
James T. Sharkey, the husband of the equitable plaintiff,
boarded this car on its trip north to Roland Park.   He had
often ridden on it before, and always got off at Cold Spring
lane.   He took a seat on the left side, the fourth row from
the rear.   After the car left Heath Brook station, and whilst
it was some distance from Cold Spring lane he looked back
several times, but the conductor, who was at the rear end
with his manifest in his hand preparing to make it up, did
not see him.   He then arose and placed his left foot, which
was nearest, on the foot-rail as if to alight, caught with both
hands the two uprights between the benches, one in each
hand, and was turning around and motioning the conductor,
and whilst in that position, and while the car was some dis-
tance from Cold Spring lane and moving rapidly, was struck
by one of the poles planted between the tracks, thrown from
the car and died in about two hours afterwards.   At each
end of the car there was a notice warning passengers (1)
against riding on the platform or putting their heads or arms
out of the windows ; (2) prohibiting jumping on or off the
car while in motion ; (3) that cars stop for passengers at
cross streets only ; (4) against attempting to leave the car
on the bridge over Stony Run, at any point, or on the ele-
vated railway, except at stations, and (5) admonishing them

that "*loss of life or injury to persons may result from a violation*" of that notice.   At the close of the testimony the defendant offered a prayer asking the Court "to give judgment in its favor against the plaintiff because the undisputed evidence in the case shows that the death of the said Sharkey was directly contributed to by his own negligence," which was granted, and from this ruling this appeal is taken.

There is no difficulty about the law applicable to the facts just set forth.   There being direct evidence of the cause of the injury there is no room for the invoking of a presumption in regard to it, because the proof of the fact rebuts the presumption.   *Andrews' case,* 39 Md. 329 ; *P. W. & B. R. R. Co.* v. *Stebbing,* 62 Md. 518.   The responsibility of the appellee for the safe carriage of passengers is founded upon contract.   The law casts on it the obligation of providing safe means of transportation and the employment of skillful agents, and while it is responsible for the consequences of any failure or omission in this respect, as well as for the negligence of its agents, there is also imposed on the passenger the duty to obey the reasonable regulations of the company in entering, occupying and leaving its cars ; and nothing less than some existing necessity, beyond his control, can justify a passenger in a breach of his contract and render the company liable for injuries received in consequence of a known violation of such regulations.   *The Penna. R. R. Co.* v. *Zebe,* 33 Pa. St. 318.   And this Court has uniformly held that, in such case, the question of negligence on the part of the passenger is a legal question for the Court to decide.   *Wilkinson's case,* 30 Md. 233 ; *Andrews' case,* 39 Md. 329; *Cason's case,* 72 Md. 377.   In this case the undisputed evidence shows that Sharkey had frequently ridden on this car ; that the warning against jumping off the car whilst in motion was conspicuously posted, and that by the exercise of reasonable care he could have known what was necessary for his own safety.   The accident was the direct result of his infraction of the rules of the company, made for the safety and protection of those who travelled in

its cars.  There was suitable and sufficient provision made within the cars for all the passengers.  There was ample room to have turned around *inside* the car and attract the attention of the conductor, either sitting or standing, but instead of availing himself of this means, he voluntarily and without any occasion therefor, took an exposed position, placing one foot outside and with his body beyond the car-line, attempted to alight from a rapidly moving car, with his back to the poles which he knew were there.  *Andrews' case,* 39 Md. 329 ; *Leonhart's case,* 66 Md. 70 ; *Cason's case,* 72 Md. 382.

The case of the *B. & P. R. R. Co.* v. *Swann,* 81 Md. 400, has been earnestly pressed upon us to sustain the appellant's contention as to negligence on the part of the appellee in the location of the poles, and in the arrangement and management of the car.  In that case, the female plaintiff had purchased a ticket and had acquired a right to be conveyed in one of the carrier's *passenger* coaches.  The carrier substituted a *baggage* car, and in the course of the journey the plaintiff was injured ; and this Court held that negligence could not be imputed to the passenger because she took passage in the baggage car, when no other means was offered, and that the questions whether the carrier had made diligent effort to procure a passenger car, and whether the baggage car was a safe vehicle were proper questions to be submitted to the jury.  In this case no such questions arise.  The appellee had furnished a passenger coach, which, so far as the record discloses, was a safe vehicle for the transportation of passengers, and in doing so fulfilled its obligation to carry the passenger safely, " so far as it could be done by the exercise of the highest degree of care and skill which was consistent with the undertaking."

. Nor is there anything in this case tending to impute any negligence to the appellee in the structure and care of its track, or in any of the subsidiary arrangements necessary to the safety of the passenger.  The appellee's cars being propelled by electricity, it was necessary that the trolley wires,

charged with electricity, should be suspended over the tracks, and to do this it was necessary that poles should be placed between the tracks for their support.   There is nothing in the record indicating that the location of the poles between the tracks, or the distance from the tracks at which they were planted, was either unusual or dangerous in railway construction.   Nor was there any negligence on the part of the defendant company in failing to have a bar on the left hand side of the car.   There was no obligation on the defendant company to restrict passengers to their places, nor to prevent persons, old enough and intelligent enough to take care of themselves, from acts of imprudence.   Passengers who performed their part of the contract for transportation, by obeying the regulations of the company, were not endangered by the proximity of the poles to the tracks, nor injured by the absence of the bar on the left side of the car. Nor was the failure of the conductor to see Sharkey's signal negligence on his part.   The next stop was Cold Spring lane, to which station Sharkey was destined, and the conductor was only bound to attend the signal in time to stop the car at that station.

For these reasons we are of opinion that there was no error in the ruling of the Court below, and the judgment will, therefore, be affirmed.

*Judgment affirmed.*

(Decided June 18th, 1896).