## THE UNITED RAILWAYS AND ELECTRIC CO. *vs.* MARGARET BEIDELMAN.

*Negligence—Starting Street Car While Passenger is Alighting—Contributory Negligence—Instructions.*

Plaintiff, a passenger on an open car of defendant's electric railway, testified that she signalled to the conductor to stop at a certain corner and when the car stopped she got upon the foot-board and while holding to the hand-rail with one hand and in the act of putting her left foot to the ground the car started again and she was thrown to the ground and injured ; that she was somewhat lame from rheumatism and could not move with agility.    She was the only witness to the accident.    Upon cross-examination she seemed to say that she began to step off the foot-board after the car started.    *Held,*

1st. That these facts constituted legally sufficient evidence of negligence on the part of the defendant to go to the jury.

2nd.  That taking the whole testimony of the plaintiff together it would be giving a forced meaning to her testimony on cross-examination to treat her as saying that at the time the car started she was in a safe position on the foot-board and voluntarily left such place of safety and stepped from the car while it was in motion.

3rd.  That plaintiff was in a position of danger on the foot-board, owing to her lameness, and the degree of care she was bound to observe in order to avoid the consequences of defendant's negligence was only ordinary care, and she was not bound to show an absolute necessity for the action she took ; and that consequently instructions to the jury that there was such contributory negligence on the part of the plaintiff as precludes a recovery or that if the plaintiff voluntarily and without necessity stepped from the foot-board to the ground while the car was in motion the verdict must be for the defendant, were both properly refused.

Appeal from the Court of Common Pleas (DOBLER, J.) The plaintiff obtained a judgment on verdict for $1,000.

The cause was argued before MCSHERRY, C. J.,FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Geo. Dobbin Penniman* and *B. Howell Griswold, Jr.* (with whom was *Fielder C. Slingluff* on the brief ), for the appellant.

*Augustus C. Binswanger* and *Myer Rosenbush*, for the appellee.

JONES, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Common Pleas in favor of the appellee against the appellant and rendered in a suit by the appellee to recover damages for injuries received in consequence of the negligence of the appellant while the appellee was a passenger on one of its cars. The *narr* alleges the negligence to have been that the appellee being upon the car as a passenger and desiring to leave it at a specified point on its route so notified the conductor in charge of the car, and the car was stopped ; and while the appellee was leaving the car and exercising due care and caution the car was "negligently, recklessly and carelessly caused to start and proceed" before she had alighted from the car "so

that she was hurled from said car to the ground with great force and violence," &c., and injured.

The case was tried before a jury and after the testimony was in the appellant and appellee respectively asked instructions to the jury upon the law applicable to the facts.    The only questions upon this appeal arise out of the action of the Court below upon these instructions, and are presented by an exception taken by the appellant to the granting by the Court of certain instructions on the part of the appellee and to the rejection of certain of those asked for by the appellant.    In disposing of these questions it will be necessary to have particular reference only to the action of the Court in rejecting the prayers of the appellant that are embraced within the exception.    The appellant's prayers were five in number.    The fourth and fifth were conceded    The first was to the effect that there was no legally sufficient evidence of any negligence on the part of the defendant.    This proposition upon the evidence was clearly untenable.

There was no witness that testified as to how the accident that caused the injury to the appellee happened except the appellee herself and her testimony was that she was a passenger on a car of the appellant corporation on the night of the 12th of September, 1900, from Druid Hill Park in the city of Baltimore to the intersection of Paca and Fayette streets, where she obtained a transfer and boarded a car—an open summer car—to go to her home on Lexington street, about half a block from where Lexington and Carey streets intersect; that she rode to the corner of Lexington and Carey streets and signaled for the car to stop ; that the car came to a full stop and she got up and stepped on the foot-board and as she was about to put her left foot to the ground the car started.    A question was then put to her as follows: "You had one foot on the step and was about to put the other foot down when the car was started and you were thrown to the ground?" to which she answered "Yes, sir." Upon cross-examination she was asked "You waited until that car stopped before you got up ?" "Yes, sir." "Did the car start ahead ?"

"I stepped—I got on the foot-board and as I was putting my left foot to the ground the car started off again." Again on redirect examination she said : "The car was going north and I was getting out with my face towards Lexington street, west–south–east I should say, I had hold of the car and the car started and it jerked me around and threw me on my left hip." Then to the question "It was first a jerk and then a fall ?" She answered, "Yes, sir." This testimony went to show that being a passenger upon a car of the appellant the appellee indicated her desire to leave the car which was stopped to enable her to do so ; that while she was in the act of leaving the car and before she could place herself safely upon the ground the car was started in consequence of which she was thrown down and injured as the *narr* had alleged. That this was evidence going to prove the allegation of the *narr* in respect to the negligence of the appellant needs no argument or authority to establish. Proof of "the occurrence of an accident and injury to a passenger is *prima facie* evidence of negligence in the carrier, and throws upon him the *onus* of rebutting the presumption by proving there was no negligence on his part." *Pitts. & Conn. R. R. Co.* v. *Andrews*, 39 Md. 329 (see page 353); *Phil., Wil. & Balt. R. Ry. Co.* v. *Anderson*, 72 Md. 519.

The proof adverted to, taken by itself, making a *prima facie* case of negligence against the appellant, it only remains to inquire what appeared in the other facts of the case to rebut, excuse or relieve the appellant from the consequences of such negligence and whether, if anything, this was properly submitted to the trying tribunal. The appellant's second prayer asserts the proposition that it appears from the evidence that there was such contributory negligence on the part of the appellee as to disentitle her to recover as a conclusion of law. The theory of the prayer, in connection with the evidence relied upon to support it, is that the appellee in proceeding to alight from the car in question stepped upon the foot-board of the car and being there in a place of safety she voluntarily stepped down from the foot-board after the car had

been put in motion and thus was thrown and injured.   As an
alternative to this second prayer and based upon the same ev-
idence the appellant offered its third prayer putting the ques-
tion of contributory negligence to the jury and being to the
effect that if the jury found from the evidence "that the plain-
tiff (appellee) signaled the conductor to stop the car, and after
the car had stopped, stepped upon the foot-board of the car,
still if they find that she voluntarily and without necessity
stepped from the foot-board of the car to the ground while
the car was in motion their verdict must be for the defendant"
(appellant).   These two propositions were based upon what
was said by the appellee as a witness upon her cross-exami-
nation.   The best way to make the full effect of this testimony
appear will be to set it out as it appears in the brief of appel-
lant's counsel.   It was elicited by a course of questioning as
follows :

"Q. How do you account for the fact when you fell off
you were in the middle of the street?   A. I stepped on the
foot-board.   Q. And then you put your foot to the ground?
A. Yes, sir.   Q. While the car was going?   A. Yes, sir.  Q.
You got down on the foot-board of the car?   A. Yes, sir.  Q.
Then the car started?   A. Yes, sir.   Q. And then you tried
to step down?   A. Yes, sir.   Q. And in that way you were
thrown?   A. Yes, sir.   Q. There was no reason why you
did not step back?   A. It was not handy for me, I being
crippled.   Q. You preferred to step off?   A. Yes, sir.   Q.
You thought it was going slow enough for you to step off?
A. It started off fast.   Q. You started to get off and then the
car started, and after the car started you tried to step off?  A.
Yes, sir ; I had started to step down as the car started off.
Q. You found you had gone beyond your place, had gone
half way across the street and then you attempted to get off
the car while it was going?   A. Yes, sir.   Q. You say you
had been lame for sometime before with rheumatism?   A.
Yes, sir.   Q. In the left limb ?   A. Yes, sir.   Q. When you
got down on the foot-board of the car the car started ?   A.
Yes, sir.   Q. And you attempted to step off while the car

was going? A. Yes, sir. Q. And you fell in the middle of the street? A. Yes, sir." Being asked on re-examination by her counsel. "How far had the car gone when you fell; how far do you think it went when you fell?" She answered. "It went a couple of yards at least." And "from the time you were in the act of alighting until the time you fell it went a couple of yards?" A. Yes, sir. Then she was asked, "Did you fall straight down, did you fall away from the car, or how did you fall?" and to this question she gave the answer which has already been quoted. "The car was going north and as I was getting out with my face towards Lexington street— west—south—east I should say, I had hold of the car and the car started and it jerked me around and threw me on my left hip."

To treat this evidence as supporting the theory of the two prayers in questions would be to give it a forced and unnatural effect. The matters appearing in this course of questioning relied upon to have that effect were those that were affirmed by counsel and which were answered by the witness perhaps without attending particularly to the form of the questions. However that may be, by no sort of fairness could the appellee be supposed upon her whole testimony to have affirmed that at the time the car started she was in a firm and safe position upon the foot-board of the car and that as a matter of her simple volition and from motives of saving herself inconvenience she left such place of safety and stepped from the car while it was in motion, or that she intended or understood herself as varying or contradicting the testimony already given by her upon her examination in chief, her cross-examination, her re-examination and again in the course of the questioning which elicited the testimony to which reference is now being had, to the effect that at the time the car started she was about putting her left foot to the ground, that, as she said in the course of this very questioning, she had "started to step down as the car started off." Very clearly the testimony which has been set out was not sufficiently clear and unequivocal to justify the conclusion of law affirmed in the

appellant's second prayer. *Lake Roland Co.* v. *McKewen,* 80 Md. 593.

Nor was the appellant's third prayer proper upon the facts of the case. At best it was misleading in putting it to the jury to find that the appellee "voluntarily *and without necessity* stepped from the foot-board of the car to the ground while the car was in motion." The jury were left to treat the necessity that was to govern the appellee's conduct under the circumstances as an absolute necessity. The evidence showed however that the appellee was crippled from rheumatism in her left limb making it awkward for her to get down from the car ; that at the time the car started she was in the act of putting her left foot upon the ground, about which there is no necessary or real contradiction in her testimony ; and that in the effort to alight from the car she was holding by one hand to the handle bar of the car. She said the car "started off fast." If then the plaintiff (appellee) did not step on the ground until after the car had started off, which is the theory of this third prayer, she was from the time the car started in a position of danger calculated to alarm and disconcert her and to prevent the exercise of clear judgment. She had either to step from the car, get back upon it which, as she testified was attended with difficulty, on account of her lameness, or hold on in the position she was in. Whichever course she might pursue would be attended with danger and liability to accident and injury.

The appellant could not by its negligence put·her in this situation of danger and embarrassment and then require as a condition for its liability for this negligence that she should show an absolute necessity for the course she pursued to extricate herself therefrom. The degree of care which the law exacts in such cases is that which might be expected of a person of reasonable and ordinary prudence and caution in like circumstances. In the case of the *Phila., Wilmington & Balt. R. R. Co.* v. *Anderson,* 72 Md. 519, this Court approved an instruction given by the lower Court as follows : "The degree of care required of a passenger is not the highest degree of

care, but only the ordinary care which ordinarily prudent people are accustomed to exercise." And in the case of *Cent. Ry. Co.* v. *Smith*, 74 Md. 212, the following was approved: "By ordinary care is understood that degree of caution, attention, activity and skill, which are habitually employed by or may reasonably be expected from persons in the situation of the respective parties, under all the circumstances surrounding them at the time." Tested by these principles and under the circumstances of this case it would seem obvious that the standard of care which this third prayer of the appellant exacted of the appellee is not that which the law prescribes.

But apart from the evidence to which reference has been made in connection with this third prayer the prayer itself assumes that there was negligence on the part of the appellant and that the evidence of contributory negligence, whatever it might be, on the part of the appellee, was to be submitted to the jury. Upon that assumption the care which the appellee was bound to observe to avoid the consequences of the negligence of the appellant was not the highest degree of care but ordinary care as the law defines it; and this latter was the standard of care which ought to have been submitted for the guidance of the jury. The prayer in question was properly refused. No specific objections have been pointed out to any of the prayers granted on behalf of the appellee and they seem to embody correct propositions of law. Finding no error in the rulings of the trial Court the judgment of that Court will be affirmed.

> *Judgment affirmed with costs to the appellee.*

(Decided June 19th, 1902.)