THOMAS ASHBROOK, Respondent, v. THE FREDERICK AVENUE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1885.

1. NEGLIGENCE—DUTIES OF PASSENGERS IN CARS AS TO PRUDENCE IN TRAVEL.—"It is the duty of the passenger, on getting on board of a car, to place himself in a safe position therein, if he is able to obtain such position ; and it is no excuse for him to place himself in an unsafe one, that the persons in charge know he is unsafe and do not drive him therefrom, when the unsafety is known to the passenger.   That riding upon the steps of a car is less safe than a seat inside, requires no proof ; it is obviously so."   Adopting *Clark v. 8th Avenue R. R. Co.*, 36 N. Y. 137.   And when he voluntarily selects the more dangerous position (having the opportunity of a safer one), his situation should quicken his apprehension of danger and correspondingly stimulate his vigilance.

2. ——— DUTIES AND LIABILITIES OF CARRIERS IN LIKE CASES—CONTRIBUTORY NEGLIGENCE.—The correct rule is that to the liability of a railway company as a passenger carrier, two things are requisite. 1. That the company shall be guilty of some negligence which mediately or immediately produced or enhanced the injury ; and, 2. That passengers should not have been guilty of any carelessness and imprudence which directly contributed to the injury, since no one can recover for an injury of which his own negligence was in whole or in part the proximate cause : and although the plaintiff's misconduct may have contributed remotely to the injury, if the defendant's misconduct was the immediate cause of it, and with the exercise of prudence he might have prevented it, he is not excused.   Where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained.   In the use of the words "proximate cause" is meant negligence occurring at the time the injury happened.   In such case no action can be sustained by either for the reason "that as there can be no apportionment of damages,

there can be no recovery." Following *Huelsenkamp v. The Citizens Railway Company*, 37 Mo. 537. The question to be determined in every case is not whether the plaintiff's negligence caused, but whether it contributed to the injury of which he complains; nor is it necessary that the plaintiff's negligence should have contributed to the injury in any greater degree than the negligence of the defendant. Sherm. and Redf. on Neg., sects. 25 and 34.

APPEAL from Buchanan Circuit Court, HON. JOSEPH P. GRUBB, J.

*Reversed.*

Statement of case by the court.

This is an action to recover damages for personal injuries. The petition, after the formal averments, states: "That on the 29th day of December, 1881, between Fifteenth and Sixteenth streets, in the city of St. Joseph, on the line of the defendant's said railway, he hailed a car of the defendant, then in charge of its agent and servant, for the purpose of taking passage on said car. That the servant of said defendant the driver of said car, in charge of the same, stopped said car for the purpose of letting this plaintiff get on said car. That plaintiff, with all possible speed and with due care, stepped upon the step of said car at the front end thereof for the purpose of getting on to and into said car. That before plaintiff had time or opportunity to get into said car the servant of the defendant, the driver of said car in charge thereof, negligently, recklessly and carelessly, and without any warning to this plaintiff, started the mules or horses attached to said car, rapidly forward, and carelessly, recklessly and negligently threw the lines by which he drove, managed and controlled said mules or horses, down across the front brake of said car and stepped back into said car, carelessly and negligently leaving said horses or mules so attached to said car and so rapidly moving forward without anyone to manage or control them, and to go just as they pleased. Plaintiff further says that the platform of said car was narrow and crowded with other persons who had got on said car and had not had time to get inside thereof, and on account of the

condition of said platform and the negligent conduct of
said driver in charge of said car, before plaintiff could
get off of said step and into said car, the horses or mules
being so negligently left without a driver and unguarded,
run said car into and collided with a wagon on said street,
which was then and there loaded with wood, by which
plaintiff, without any fault on his part, but solely through
and in consequence of the negligence and carelessness of
the defendant, its agent and servant in charge of said car,
was caught between the front end of said car and the
wood and wagon, so then and there as aforesaid, and was
then and there greatly bruised, crushed and injured in
and about the back, hips, stomach and bowels, from
which said injuries plaintiff suffered and still suffers
great bodily pain and mental anguish. Plaintiff further
says that his said injuries so received as aforesaid are
permanent.''

It asks for five thousand dollars as damages.

The answer tendered the general issue, and a plea of
contributory negligence on the part of the plaintiff.

The material portions of plaintiff's evidence are as
follows : ''The car came along and I stepped on the step
of the platform. There was a gentleman standing with
his feet in that position (indicating that his legs were
stretched across the platform). The driver at the same
time started up and threw his lines over the brake. I hap-
pened to look in at the window, saw my wife, took off
my hat and bowed to her, as any gentleman would. At
that time something struck me here (indicating his left
side). That is all I knew until about 12 o'clock the next
day. The driver went inside the car to change my wife's
money and left nobody in charge of the team. His back
was towards me and his team. I did not go inside the
car because the car was open at either end and there were
steps at the front and back. The car stopped beside me
at that time at the front end, and I got on, guarding my-
self by catching hold of the handles and guard. I could
not get in because the gentleman had his feet so they
blocked up the door, and the driver was in the door. It
seemed to me as if it were a wagon that struck me. I did

not see the wagon at the time. It struck me suddenly. The injuries have affected me so I cannot sleep on the left side. I have not had a good night's rest for a year, and I cannot pass my water easily. I was confined to my bed a little over three weeks. Was not able to go out. The injuries affect me just the same now. At the time I was struck I was just looking in the car at my wife and bowed to her. I had just got on the car."

*Cross-examination:* "The line of this street car, where I was hurt on Frederick avenue, runs east and west. When I first saw the car I was on the south side of the track. When I first saw the car it had not got to me. When I saw it, I signaled it. It slacked up about still and I got on. It stopped immediately beside me. I won't swear the car stopped. The driver saw my signal when I put up my hand. I saw a gentleman standing on the platform with his feet in that position (showing to jury, indicating that his legs were stretched across the platform), his back against the car, and his feet against the dashboard. The driver was on the platform. My wife was inside the car, but I did not know it until I saw her in the car. I don't remember seeing anybody on the rear platform. It was vacant. I did not see the man standing on the platform before the car got where I was. I don't know whether I could have seen him. I saw the driver, but did not see the other man at all, until after I got on. To the best of my recollection the car came to a standstill. At the time I got on I did not see the wood wagon coming. I cannot estimate how long it was after I got on until I was struck, but the car went about twenty-five feet from where I got on. After I got on, the team was started in a trot. As soon as I got on the step I took hold with both hands and turned my head and noticed my wife inside. I think I turned my head immediately. At the time I got on, the driver hit the mules. He threw his lines over the crank of the brake. Immediately after getting on this lower step I staid there for a moment, for I could not get on the platform. If I am not mistaken, I asked the gentleman if he would let me on. He did not say anything. I think I asked him before I saw my

wife. At the same time the driver stepped in at the door I saw my wife. It is not a fact that I spoke to my wife from the outside of the car. I did not swing around on the outside of the car to speak to my wife. It was about a second after I spoke to her that I was struck. I swear that the driver was inside the door. I did not see the wood wagon at all. My side was towards it. I did not have time to step upon the platform at all. I do not remember seeing anybody inside except my wife. I think there was an old lady. I saw my wife and the old lady. The car had no rear platform, and I did not see anybody on the rear step. It was optional with me to get on at either end. The front step of that car lies about thirteen inches within the outside line of the car. I was standing on the lower step that is attached to the platform. I do not remember whether there was any actual collision between the car and the wood wagon. I was rendered unconscious. I don't remember getting up and going to the sidewalk. The car was going west, towards town. It was a quarter after 3 o'clock. There was no one else injured but me, neither on the platform nor inside the car. I went down to the stable some five weeks afterwards. I met the street-car driver. I remember a conversation I had with the driver. I wrote it down after I got up home. I did not state to the driver in that conversation that I did not attach any blame to him. I got upon this car west and diagonal from Seaman's store. I was in the habit of riding upon this line ever since it had run there. I should judge I was about in front of the car about the time it stopped. I was off of the sidewalk when I signaled the driver. I think about three or four feet from the curbstone. I did not look west at all."

He introduced other witnesses, who testified merely to his injuries, and one of them to seeing him start to get on the car. The witness thought the car checked up for plaintiff to get on. The car driver, Al Sagers, testified as follows:

"I am acquainted with plaintiff. He got on my car between Sixteenth and Seventeenth streets, on Frederick

avenue.   I was going towards Market Square.   He stepped upon the step of the car, took hold of the dash-board with one hand and the brace with the other.   The first time I saw him was just when the wood wagon was catching him from the car.   He was on the step and was not on the platform at all.   I stopped the car before he dropped from the car.   The car stopped and the wagon kept on going.   The wood wagon did not stop within two or three hundred feet of the car after it passed.   I saw no one signal me to stop.   I was making change for plaintiff's wife when he was caught.   I was standing right at the door with one foot on the door-sill.   The platform is in the neighborhood of two or three feet wide between the dashboard and the front end of the car. The width from step to step is between five and six feet. This car was numbered six.   I do not remember how long I had driven this car.   I think I had this car a week or over.   The car was drawn by mules.   On the inside I had three passengers, Mr. Ashbrook's wife, Mr. Turner, and a lady.   The car will conveniently hold twenty passen-gers without exposing their bodies on either side of the car.   Four or five persons can ride on the platform.   Mr. Robinson was on the platform with me at the time on the left hand side of me.   It was on that side that this plaintiff got on.   I suppose that between where I stood, as driver, and the car step, is between three and four feet. There is a window in the front end of the car.   There is a window on the left of the door, and the door is in the center, and on either side there is a window.   The money box was on the opposite side from where Ashbrook got on, so that you could look through that window into the car.   The casing between the window and the door is about three or four inches wide.   Mr. Robinson was standing on that platform with me.   I could not see in what position.   At that time I was going along in a kind of slow trot, at the usual rate of speed.   There was no collision between the wood wagon and the car.   It did not touch the car.   This car was not injured by the wood wagon in any way.   I had a conversation with the plain-tiff at the street-car barn about five weeks after the acci-

dent. I do not recollect what he said about not blaming me. The substance of it, to my recollection, was that he did not blame me. I had known Mr. Ashbrook about two years and he had ridden with me frequently. I knew him personally. This car, when he got on, was near George Sterk's grocery store, on the avenue, between Fifteenth and Sixteenth streets."

*Cross-examination:* "My car, when I saw him being taken off, was about twenty-five yards from Seaman's store. I saw him just as the wagon was taking him. I turned around, seized the brake and stopped the car as quickly as I could. The car did not go over four or five feet. He dropped down from the car just as I stopped the car. I worked for this company continuously from the spring, before the accident happened, in 1881. I quit once during that time. I do not recollect how long I laid off; not more than half a month. I had to lay off. I never got discharged. I made a written statement in this case to the superintendent. He came and requested me to make a statement in this case, not very long after the accident. I cannot state how long. The first time I saw plaintiff was when the wagon was taking him off. I never stopped or checked up to take plaintiff on. I never saw Seaman. No person gave me a signal, and I did not check up. This car was sent off to be painted up. I think it was sent to Wyandotte, Kansas, quite a while after the accident. I do not recollect how long after the accident I ran this car. I do not recollect of seeing Mr. Stout examine this car. I might have spoken to Mr. Judson about this man on the platform. He lives near Filmore, Mo. I do not know how far it is from here to Filmore. The front platform is between five and six feet wide. It is not much over five feet. I am sure it is five feet. I never measured it. From the car out to the front part of the platform is between two and two and a half feet. From the outside edge of the window to the outside edge of the car is just the thickness of the facings. The facing is an inch or an inch and a half thick. The window is about sixteen or seventeen inches. Robinson rode from the upper end of town with me; that

is, about five or six blocks. I had been standing right there by him all the time, and knew that he was there. I do not know what the words were that Ashbrook said (in conversation at barn). I want the jury to understand that I recollect the substance of what we were talking about. Dave Hatfield was present. It was quite a while after the injury. I can't tell the exact date. The lines were over the brake and were out of my hands. I always carried the lines on the brake. I dropped them when Mrs. Ashbrook asked me to make change. I don't recollect what I changed. I think it was a piece of silver money. I don't recollect how much change I gave. I was facing those inside and my back was to my mules. I don't know who was driving that wood wagon. I saw Ashbrook after he was hurt. I saw him get up from the place where he dropped and run to the sidewalk, and I and Mr. Turner went to him. The wagon did not strike the car."

B. B. Turner testified as follows: "I am a butcher and grocery man; reside in St. Joseph, Mo., and know the plaintiff in this case. I know about this accident. I was on the car at the time it occurred. I was a passenger. Well, what I saw of it was: the driver's attention was called to Mrs. Ashbrook to make change. Whether the driver got clear in or not I have forgotten. When I happened to look up at that moment, I saw that there was going to be a collision and hallooed: 'Look out there.' He (the driver) whirled and grabbed the brake. I saw plaintiff fall in a heap in the street. I could not say whether the car struck the wood wagon or not. All that I know was that the car was raised up and dropped back. The wood wagon stopped after it got a hundred feet or so away. I did not see him drop from the platform. He dropped after they passed. They got clear separated before the car stopped. The driver had turned round before they collided to make change, and he whirled and grabbed his brake and stopped it (the car) as quick as he could. I saw the wood wagon approaching. When I first noticed the wood wagon it was probably between a block and a block and a half away. It was kind of bearing in

towards the track. I saw it come right in towards the front end of the car. I was looking out through the corner of the car. I did not notice anyone except the driver on the front platform. I do not know whether Mr. Ashbrook was on. The car did not stop from the time I got on until the accident. I got on near Burvenich's. Burvenich's is east of Seaman's. It is nearly half a block from Seaman's. I was standing about three or four feet from the platform when I saw this wagon coming. The driver had not made change for me at all. The car door was open and I saw no one there at all except the driver. I saw this wood wagon before it touched. It was veering in towards the car. The wheel of the wagon was, I think, two or three feet away from the outside of the track. I did not pay much attention to it. I do not know of any other passenger being injured. I did not see any one but Mrs. Ashbrook and myself in the car."

Question. "Were there windows on that side of the car?"

Answer. "Yes, sir. I did not see any of them broken. I did not look at the outside of the car."

Silas R. Owens, a witness produced and sworn on part of defendant, testified as follows :

"I live on Twentieth street, between Union and Clay. Am in no business at present. In December, 1881, I was in charge of the Frederick Avenue Railway Company. I know Al. Sager. He was driver of No. 6 at that time. Up to that time I had known that car between two or three years. It is two feet four inches between the platform ; and crosswise it is four feet two inches. The brake is located to the right of the center. The door is two feet, and the windows on either side are about eighteen inches by twenty-four inches. The length of the car between the rear door and the front is ten feet. There are five windows. The glass on the side come within one-half inch of the outside of the car. The surface of the car in the center, including the guard, extends about six inches beyond the line of the steps. I think I saw that car on its return trip after the injury. I was at the barn. I examined the car, and I didn't discover any-

thing that would indicate damage. No windows broken; the car not scratched. Mules were used at that time. There is no pole used; only a double and single tree and tugs. The car is managed by the brake. You cannot stop a car by holding in the horses. It is controlled entirely by the brake."

*Cross-examination:* "I did not hear about the accident before I saw the car. I examined it as I always did."

There was other testimony relative to certain admissions claimed to have been made by plaintiff, exculpatory of the driver of the car. After instructions from the court, the jury found for the plaintiff, and assessed his damages at $1,000. Defendant has brought the case here by appeal.

JUDSON & MOTTER, for the appellant.

I. It is alleged by the plaintiff in his petition that when he was injured he was standing on the step of the front platform of defendant's car, because the platform was narrow and crowded with other persons, and he had not time to get inside thereof. This was contributory negligence *per se.* If then the plaintiff elected to enter at the more dangerous end of the car, when his entrance that way was actually obstructed, the negligence was his own, and he is not entitled to recover in this action. *Turner v. Hannibal &c. Co.,* 74 Mo. 607.

II. It was the duty of the plaintiff to look out for an approaching wagon, and by his failure to do so, "he was guilty of negligence." *Buesching v. St. Louis Gas Light Co.,* 73 Mo. 229. For these reasons the court erred in not granting the first instruction (which was in the nature of a demurrer to the evidence), asked by the defendant. *Bell v. R. R. Co.,* 72 Mo. 57.

III. The proof made by plaintiff was mainly in support of a cause of action not alleged in his petition (to-wit, the obstruction caused by the passenger on the platform), and *if this is true,* the plaintiff was not entitled to recover, as it was evidence tending to support an entirely different cause of action. *Price v. R. R. Co.,*

72 Mo. 418; *Waldhier v. Hannibal &c. R. R. Co.*, 71
Mo. 514.

IV.   There was an evident attempt to bring this case
within the decision in *Huelsenkamp v. Citizen's Railway
Co.*, 37 Mo. 537.   But the evidence failed entirely to sup-
port the claim for liability, such as that case justifies
under the law.

V.   There is nothing in the testimony to show that
there was any negligence on the part of the driver of the
car at all.   He could not have turned off the rails to go
out of the way of the wagon.   And he had no right to
expect the plaintiff to be guilty of such gross negligence
as he actually did display, and ought not to be blamed
for not foreseeing such extraordinary carelessness.

VI.   The defendant's rejected instructions should
have been given.   Taken as a whole, they put the case
properly before the jury, under the law, if it were one
that should have been submitted to the consideration of
the jury at all.   The position in these instructions is
strongly sustained in the case of *Clark v. Eighth Ave.
Co.* (36 N. Y. 138).

VII.   There was no negligence by the driver in
throwing the lines over the brake, as the car could not
have been checked by the lines, as was shown by the
evidence.   The court should have so instructed the jury
when requested so to do, as it was, by the defendant.

RAMEY & BROWN and GREEN & BARNES, for the re-
spondent.

I.   The fact that plaintiff was on the step of the
front platform when he was injured, was not negligence
as a *matter of law*.   The question of negligence is for
the jury to decide from the facts and circumstances de-
tailed in the evidence.   *Burns v. The Bellefontaine Rail-
way*, 50 Mo. 140; see, also, 37 Mo. 537.

II.   The law presumes that the carrier will perform
his duty, and what the law presumes to be true, the pas-
senger has a right to presume.   The question as to whether
the plaintiff was negligent in standing on the step of the
front platform was fairly submitted to the jury upon

proper instructions, and this is all the appellant is entitled to.

III.   Even though the preponderance of the evidence be admitted to have been against the facts found by the verdict (which here is not the case), still, the question being for the jury, and there being evidence to support the same, this court must sustain the verdict.

IV.   The case in 36 N. Y. 138 has no application to this case.   There the injured party knew of his perilous situation at the time of the accident, whereas here he had no such knowledge or information.

V.   It is the duty of the court to declare the law at any time, or at any stage of the case.

Opinion by PHILIPS, P. J.

1.   The plaintiff's cause of action is certainly such as to require a court to "stretch the legal tether to its utmost tension" to uphold.   It is of such questionable merit as would well have warranted the trial court in awarding a *venire de novo*.   It would require the extremest indulgence of liberality in favor of the province of the jury as triers of the facts, to say there was any evidence to support this verdict.   It is questionable, in the first place, whether the plaintiff has not stated one ground of negligence in his petition, and recovered on another.   The impression one would naturally receive from reading the averments of the petition is, that plaintiff's misfortune resulted from the misconduct of the driver in whipping up his team at such a rate of speed as not to have allowed the passenger time to get inside of the car before the collision, combined with the fact that other passengers were on the platform who had not time to enter the car, who obstructed the ingress of the plaintiff, thereby compelling him to remain on the step of the car until the collision occurred.   Whereas the case made was that there was no unusual abruptness in starting the team, and no rapid speed, nor was there but one person on the platform, and he was not detained from entering the car, but was leisurely standing on the platform leaning back, so his feet were only in the way of plaintiff

stepping upon the platform. But conceding that the allegations were sufficient to warrant the evidence, it is difficult to reconcile the conduct of the plaintiff with that degree of care and ordinary prudence which the law exacts of him before he can put the defendant in default.

There were only three people in the car. There was ample room for the plaintiff on the inside, where a passenger should go. There was nothing to prevent his entering at the rear of the car, but he voluntarily, without necessity, went upon the front step of the car, seeing at the time, as he must be presumed to have seen, if he was using his eyes at all, that the driver and another person were on the platform. It does not appear that he made any effort, after reaching the step, to get upon the platform. "It is the duty of the passenger, on getting on board of a car, to place himself in a safe position therein, if he is able to obtain such position, and it is no excuse for him to place himself in an unsafe one, that the persons in charge know he is unsafe, and do not drive him therefrom, when the unsafety is known to the passenger. That riding upon the steps of a street car is less safe than a seat inside, requires no proof; it is obviously so." *Clark v. Eighth Avenue R. R. Co.*, 36 N. Y. 137-8, and cases cited. That the plaintiff had ample time, after reaching the step, to have gone inside of the car before the collision occurred, is plainly shown by the facts disclosed by his own evidence. He states that after he got on the step the driver had time to drop his lines and turn round and enter the car, and the car went a distance of twenty-five feet before he was struck. One step would have taken him on to the platform, where he would have been out of the danger that caused his injury. Three steps would have placed him inside of the door of the car. His only excuse for the delay is, that the passenger standing on the platform prevented his entering thereon.

There are some facts so much within the range of common sense and experience as to admit of no proof, either to affirm or contradict them. This is one of them. Leaning back, as the passenger was, on a platform from two

to three feet across, it required no effort to step over his feet. Plaintiff thinks he asked the person to let him in; but of this he is not certain. It does not appear that he even essayed an effort. He never once looked to the front, although he was in a position of exposure. And instead of exercising the least degree of care or thought of himself, the truth is admitted by him that he discovered his wife inside of the car and was engaged in bowing to her. This may have been commendable gallantry, and an admirable performance for a husband, but the law will not place such a premium on the street performance as to require the defendant to pay $1,000 for the exhibition. The common law rests not on the code of chivalry. It is based on common right and the mutual obligations of man to man in the social compact. The plaintiff, although he was standing on the lower step, did not even take the precaution to keep his body erect. He stated that the "step of that car lies about thirteen inches within the outside line of the car." So if he had not been bowing and throwing his body back he would not have been hurt. There was no collision between the car and the wagon, for the car was untouched; showing, beyond the possibility of a cavil, that if he had not unnecessarily swung his body beyond the sides of the car he would have been unhurt. The conclusion, it does seem to us, is unavoidable that plaintiff voluntarily chose to stop where he did, and, in total forgetfulness of his situation, was paying his respects to his wife instead of passing on into the car.

I have been unable to find any adjudicated case, on like facts, where any court has upheld a verdict for damages. In *Clark v. Eighth Avenue R. R. Co.*, *supra*, the facts which exonerated the passenger were that the car was full, and that the platform was full, "so that no more persons could stand thereon; that in this situation the car was stopped for him to get on; that upon his getting on there was no place for him, except standing on the steps; that while riding in this situation, the conductor called upon him for, and received from him, his fare."

The case of *Huelsenkamp v. Citizen's Ry. Co.* (37 Mo. 237), is as strong a case as we have found in favor of plaintiff. But the controlling facts there were, that the car was full on the inside, and the platform was full, so that the plaintiff could not ride elsewhere than on the step. Had that car been comparatively empty, with only one person standing on the platform when the injury occurred, it is quite apparent the court would have directed a nonsuit.

Nor is there any parallel between this case and that of *Burns v. Bellefontaine Ry. Co.*, of St. Louis (50 Mo. 139). The only negligence imputed to the conduct of the plaintiff there was the simple fact that he was standing on the platform with the driver, and with the driver's approbation. The court held that this fact did not constitute negligence in law. In the case at bar, it does not appear that the driver was even aware that plaintiff had stopped on the lower step. If he saw the plaintiff at all, there is nothing to indicate that the driver should suppose the passenger would stop on that lower step, and have his attention wholly occupied with salutations to his wife on the inside of the car.

We would not be understood as holding that where there is a choice of positions upon a street car, either of which a passenger may lawfully take, that he is obliged to select that which is the least dangerous ; nor that negligence is necessarily imputable to a passenger for going aboard in front of instead of the rear of the car. But we do maintain that when he voluntarily selects the more dangerous position, his situation should quicken his apprehension of danger, and correspondingly stimulate his vigilance. And if, after thus unnecessarily stopping on the step of the car in front, he carelessly swings his body beyond the side of the car, without once looking forward for any approaching object on a thoroughfare of a city, by reason of which his body collides with a passing vehicle, which does not strike the car, he is guilty of contributory negligence which should prevent him from demanding damages of the railway company.

Admitting all that is claimed under this evidence,

was the driver guilty of such negligence as ought to shift the responsibility for this accident from plaintiff to defendant? Wagner, J., in the Huelsenkamp case, *supra*, summarizes the law on this subject as follows: "That the company shall be guilty of some negligence which mediately or immediately produced or enhanced the injury, and that passengers should not have been guilty of any carelessness and imprudence which directly contributed to the injury, since no one can recover for an injury of which his own negligence was in whole or in part the proximate cause ; and although the plaintiff's misconduct was the immediate cause of it, may have contributed remotely to the injury, if the defendant's conduct was the immediate cause of it, and with the exercise of prudence he might have prevented it, he is not excused. * * * Where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained by either, for the reason that, as there can be no apportionment of damages, there can be no recovery."

So Sherman and Redfield (Neg. sects. 25, 34) say: "One who is injured by the mere negligence of another can not recover at law or in equity, any compensation for his injury, if he, by his own, or his agent's, ordinary negligence or wilful wrong, proximately contributes to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, *after becoming aware* of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him. * * * It is not essential to this defence that the plaintiff should have been, in any degree, the cause of the act by which he was injured. It is enough to defeat him, if the injury might have been avoided by his exercise of ordinary care. The question to be determined in every case is, not whether the plaintiff's negligence caused, but whether it

contributed to the injury of which he complains. Neither is it necessary that the plaintiff's negligence should have contributed to the injury in any greater degree than the negligence of the defendant."

The imputation of negligence against the defendant rests solely on the act of the driver in turning from his brake to make change for the fare of plaintiff's wife. He was then in the line of duty. While the law exacted of him a high degree of care and vigilance in managing the car, it still is that degree of care which a prudent person, under like circumstances, should exercise, proportioned to the danger to be avoided by his vigilance, "judged by the standard of common prudence and experience."

No danger was apparent when the driver left his brake for the moment. Had he seen the wagon approaching, it would have been most reasonable to suppose that, as the car had the right of way, the wagon would keep clear of its path, as it was not then on it, the driver of the wagon being in full view of the car. It can not, therefore, be maintained that he was guilty of any negligence in turning for the moment from his brake. And as persuasive proof that there was nothing in the movement of the wagon, prior to the instant of the collision, to excite the least apprehension on the part of the driver, the passenger standing on the front of the car gave no alarm.

It devolved on the plaintiff to establish, by reasonable evidence, that the defendant, under such circumstances, discovered the danger in time to have averted it, or that he might have so discovered it by the exercise of reasonable care. The evidence shows that at the instant of the alarm the driver sprang to his post, but it was unavailing. Had he been at the brake and stopped the car it would not have stopped the course of the wagon. And it would, furthermore, be wholly unreasonable to hold that the driver should have anticipated that the teamster would run so close to his car, and especially to hold that the driver should so manage his car, as although a passing team does not touch it, he should anticipate that a passenger would be coquetting with his wife, and his

body, from this "curtsying," be thrown clear of the car. No driver can be held to an anticipation of such concurring causes outside of any act of his.

Averse as we are to interfering with the verdicts of juries on questions of fact, yet the courts have a solemn duty to perform, to see that the citizen's property is not taken from him without evidence and against the law. The plaintiff's misfortune may touch our sympathies, but "the rule which denies relief to a plaintiff guilty of contributory negligence, is based less upon considerations of what is just to the defendant, than upon grounds of public policy, which requires, in the interest of the whole community, that every one should take such care of himself as can reasonably be expected of him." Sherman & Redfield on Negligence, sect. 42.

The court should have sustained the demurrer to the evidence. The judgment of the circuit court is reversed. All concur.