87 101
90 574
87 101
98 253

ROSS ARCHER v. THE FORT WAYNE & ELMWOOD RAILWAY COMPANY.

*Negligence—Street railways—Riding on front platform.*

1. A passenger who, by reason of the crowded condition of a street-car and of the rear platform, is obliged to ride on the front platform, has a right to do so in the absence of regulations to the contrary, and is not guilty of negligence in so doing; citing *Upham v. Railway Co.*, 85 Mich. 12.

2. It is a question of fact for the jury to determine whether or not such manner of riding is so dangerous that the company, in discharging its duty to the public, should construct some kind of a guard to prevent passengers from being thrown from the car, and the question of the negligence of a passenger *while so riding*, and of the company, should be submitted to the jury under proper instructions.

Error to Wayne. (Gartner, J.) Submitted on briefs June 11, 1891. Decided July 28, 1891.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*S. E. Engle,* for appellant.

*Edwin F. Conely* and *Orla B. Taylor,* for defendant.

CHAMPLIN, C. J. On the 25th day of December, 1888, between 8 and 9 o'clock in the evening, the plaintiff took passage upon one of the defendant's cars, but, on

account of the number of passengers in the car and upon the rear platform, was compelled to stand upon the front platform of the car, from which he was thrown, and received very severe injuries by his leg being run over and crushed by one of the car-wheels. The court took the case from the jury, and directed a verdict for the defendant.

The declaration in the case álleges the duty of the defendant company, which plaintiff claims it violated, as follows:

1. To provide and furnish said plaintiff a safe and convenient seat or place to ride while being so conveyed as such passenger.

2. To provide prudent, safe, and competent agents to manage said car, and provide for his safety as such passenger.

3. Not to drive said car at such a rate of speed as to be dangerous to said passengers, and to the plaintiff as a passenger.

4. To have a chain or guard across the passage-way down the steps at the end of the front platform extending across the passage-way, for the safety of passengers.

5. To slacken the speed of the car and to stop when called upon to do so by the plaintiff at the time he slipped and fell from the car, while he was hanging to the guard-rail of the car.

The neglect of duty alleged by the plaintiff in his declaration is as follows:

1. That the defendant wrongfully, negligently, and carelessly then and there furnished and provided imprudent and incompetent agents, to wit, the driver and conductor then in charge of the car.

2. That the defendant wrongfully and negligently failed to provide a safe and suitable seat or place for the plaintiff in and upon such car as such passenger, and negligently and carelessly allowed the car to be so filled and crowded as to prevent the plaintiff from passing inside the car, which in the exercise of due care he endeavored to do, and thereby wrongfully compelled him to stand and ride upon the front platform of said car.

3. That while he was so lawfully standing and riding, and in the exercise of due care on his part, the defendant wrongfully and negligently had no chain or guard across the passage-way down the steps at the end of the front platform on the right hand of the car so moving eastward, but wrongfully and negligently allowed said chain or guard to be hanging there, not in use, and not hooked up as a guard and protection across the steps in its usual place where it was customary to keep the same.

4. That the driver and conductor wrongfully, recklessly, and carelessly mismanaged said car, and were then and there going at a high rate of speed, when the driver wrongfully and carelessly, without any notice or warning to the plaintiff, struck the horses a blow with his whip, causing them to jump forward, giving the car a sudden jerk and a pitching, rocking motion, and still further increasing its speed to a high and dangerous rate, just as it was passing the cross-walk on Riopelle street, thereby then and there throwing the plaintiff from the platform at the right hand thereof, causing him to slip from the step, and to swing around to his right towards the car, while trying to save himself by clinging with his right hand to the hand-rail of the car, the swift motion of the car dragging him backwards, while struggling to recover himself, and while calling, as he then did, to the driver to stop or slacken the speed of the car, and causing him to fall upon his back with his leg across the rail of the track, so that the car-wheel ran over it, and crushed the ankle-joint and bones of the leg below the knee, and cut, crushed, and bruised the flesh of his leg.

The declaration, having set out the duty of the defendant, and its neglect to observe such duty, then states that, "by reason of the wrongful and negligent acts of the defendant aforesaid, the plaintiff was seriously hurt," etc.; and concludes, "whereby, and by reason of the premises aforesaid, the plaintiff hath sustained damages," etc.

The testimony introduced upon the trial showed that the plaintiff and his father took passage upon the car on the night stated, and that the car was filled inside, and the rear platform also, and that they were obliged to

take passage upon the front platform; and that while riding in that place, with his back against the car and holding onto the guard-rail at the right with his right hand, the driver struck the horses with his whip, which caused the car to swerve to the left; and, as he was standing on the right hand of the door of the car, his back was thrown against the end of the car, and he went to pitch forward to try to recover his footing, slipped down the step, striking his hip against it, and, hanging to the guard-rail, his back was turned towards the horses. He tried to regain his footing, and did regain it, and tried to get back on the car, but slipped off the lower step, and was swung around, and, still hanging by his right hand, was dragged along the ground, and his foot was caught under the wheel of the car, and run over. He called to the driver to stop, and he testifies that the driver "appeared to be having all he could do to attend to his horses. They were kind of unmanageable, and he did not see me, or did not stop the car until I was run over." He testifies that he thought he shouted loud enough for him to hear, but he did not make any attempt to stop the car. The word he used when he called out was "Stop!" as loud as he could. He testifies that the driver did not go over 10 or 15 feet after the car ran over him until it was stopped.

The plaintiff's father was also sworn as a witness on behalf of the plaintiff, and testified that he was also riding upon the front platform on the left of the door; that the road appeared to be very rough; that the car swayed and swerved a great deal, with a kind of rocking motion, and that he held onto the dash-board with both hands; that the driver struck the horses a blow with the whip, which caused them to start suddenly. He also testified that the driver was driving with loose lines, and did not make any effort to stop when his son called out, "until

he went quite a little past; that he told the driver to stop, that the boy had fallen off; that the driver went only a short distance, he did not think he went over half a car, from the time he got hurt, but from the time he fell off "he must have gone three or four rods, anyway." He also testified that there was no guard across the steps on either side of the platform. The plaintiff testified as to the speed at which they were going as follows:

"They seemed to be going quite rapidly. I have seen them drive fully as, fast plenty of times, and a good deal slower. They seemed to have a good rate of speed; that is, at the time I fell off."

Testimony was also introduced tending to show that the driver was behind time, and was endeavoring to make it up.

The plaintiff introduced in evidence sections 4 and 5 of chapter 107 of the Revised Ordinances of 1890, as follows :

"SEC. 4. Every street-railway company in the city of Detroit shall so inclose and guard the front platform of each car operated and run by any such company within the limits of the city as to prevent passengers from getting on or off such platform. (Approved July 14, 1873.)

"SEC. 5. No conductor or driver on any street-railway car, while such car is in use, shall permit any person to enter or leave the same by way of the front or forward platform; and no person, when the forward platform of any street-railway car in actual use is inclosed or guarded, as required in the preceding section, shall enter or leave, or attempt to enter or leave, such car by the forward platform thereof; and no person under the age of sixteen years shall ride on the rear platform of any street-railway car, or get on or off the same while said car is in motion. (Approved May 4, 1876.)"

There was no testimony introduced upon the trial which tended to show that the car upon which the plaintiff. was riding had a chain or any other device for preventing

persons from entering or leaving by way of the forward platform, or to protect them while riding thereon.

The only testimony bearing upon the question of the negligence of the company or its agents, namely the conductor and driver, in the management of the car, was the testimony showing that the car was filled with passengers inside, and the rear platform was also filled, so that the plaintiff could not obtain passage inside the car, and was thereby compelled, if he rode upon that car, to take passage upon the front platform. This he had a right to do, and it was not negligence on his part so to occupy the front platform under the circumstances. *Upham v. Railway Co.*, 85 Mich. 12. It does not appear from the plaintiff's own testimony that the car was driven at an unusual rate of speed, and it does appear that the accident happened upon a straight track, and that there was nothing calling upon the defendant and its agent to give any special warning that he was about to use his whip upon his horses. The plaintiff was in position where he could observe the movements of the driver, and was as well qualified to see and know when the whip was used as if he had been warned by the voice of the driver that he was about to strike his horses. The position he occupied upon the car was one fraught with danger, and called upon him to use diligence commensurate to the dangerous position he occupied. It is true that the railway company owed to him, while riding in that place, increased care not to so conduct and manage its cars as by its neglect to cause him injury, and it is a question of fact which ought to be submitted to a jury to determine whether or not the position of riding upon the front platform of a street-car is so dangerous that the company, in discharging its duty to the public, should construct some kind of a guard to prevent them from being thrown from the car.

It was said in the case above referred to that it was difficult to see upon what reason the courts can hold that platforms of cars are dangerous, and that persons who ride there assume all the risk, and thereby relieve such companies from all liability, except for gross, willful, and wanton misconduct; and, under the facts of that case, it was said that the question of the negligence of the plaintiff, as well as of the defendant, belonged to the jury to determine, and should have been submitted to them under proper instructions. We think this case comes within the ruling above referred to, and should have been submitted to the jury.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.