PARHAM B. BRIDGES *v.* JACKSON ELECTRIC RAILWAY, LIGHT, AND POWER COMPANY.

1. CIRCUIT COURT PRACTICE.    *Peremptory instruction.*    *Contributory negligence.*

   Where, in an action for injuries, plaintiff's evidence and all just inferences to be drawn therefrom show that his own negligence contributed to produce the injury, it is the duty of the court, though defendant introduces no proof to support a plea of contributory negligence, to instruct the jury, as a matter of law, that plaintiff cannot recover.

2. SAME.    *When contributory negligence a question of law.*

   When the facts are not disputed, and the inferences or conclusion resulting therefrom are indisputable, the question of contributory negligence is one of law for the court.

3. SAME.    *Affirmative defense.*    *When defendant need not produce evidence.*

   A defendant need not introduce testimony to support a plea which is fully sustained by plaintiff's evidence.

4. STREET RAILWAYS.    *Passenger's recklessness.*

   Where a passenger on a street car, inside which there is plenty of room, voluntarily leaves his seat and stands on the car platform, and, while the car is running rapidly, attempts to return to his seat by way of the running board of the car, on a side where he knows there are trolley posts, instead of going down the aisle, he thereby assumes all the risks arising from the position taken by him.

5. SAME.    *Trolley posts.    Evidence.*

In an action against a street railway for injuries to a passenger, who, while standing on the running board of defendant's car, was struck by a trolley post at the side of the track, testimony that the post was slightly nearer the track than two other posts just on each side of it :

(*a*) Does not tend to prove that the post in question was dangerously near the track; nor

(*b*) Does it show gross negligence on defendant's part, the other posts appearing to have been further from the track than was necessary; nor

(*c*) Does the fact that the accident occurred tend to prove that the post was too near the track.

6. SAME.    *Guard rail.*

The fact that the guard rail, or bar, which plaintiff knew was ordinarily kept down along the side of the car nearest the posts, as protection against the same, was up, did not relieve him of contributory negligence in exposing himself to an obvious danger. .

7. SAME.    *Failure to maintain.*

A street railway is not negligent in failing to maintain a guard rail on the side of a car nearest the trolley posts for the protection of passengers where the posts are not dangerously near the track, and the danger therefrom is obvious.

8. SAME.    *Liberty of passengers.    Carriers not to restrain.* ·

Carriers are not bound to so restrain the liberty of their passengers that the latter can by no act of their own put themselves in unnecessary danger.    .

FROM the circuit court of, first district, Hinds county.
HON. DAVID M. MILLER, Judge.

Bridges, the appellant, was plaintiff, and the railway company, the appellee, defendant in the court below.    From a judgment for defendant, the plaintiff appealed to the supreme court.    The facts are stated in the opinion of the court.

*Alexander & Alexander,* and *George B. Power,* for appellant.

It is a matter of common knowledge that street railways daily undertake to carry passengers greatly in excess of the

seating capacity of their cars, and that they stop their cars and take on passengers so long as there is standing room on the platforms and footboards, and that they collect fares from those on the platforms and footboards as well as from those within the cars.

The defendant railway company was no exception to the general rule.

To allow passengers to ride on the running board of a car under any circumstances is to extend an implied invitation to ride there under all circumstances; and from the fact that the company allowed passengers to ride there, collecting fares and not objecting, one would be entitled to presume that the running board of a car is reasonably safe, and that the construction of the company's track and trolley poles is such as to make it safe.

A further invitation was impliedly extended to plaintiff to use this running board, not solely for the purpose of riding there, but for the purpose of passing from one part of the car to another, by reason of the fact that the guard rail was up on the side where plaintiff was sitting, and there was nothing to prevent him from passing from his seat to the running board. The mere fact of this guard rail being used would entitle one to conclude that when the guard rail was up there would be no danger. Clark's Accident Law (2d ed.), Street Railways, sec. 13; *Elliott* v. *Newport Railway Co.,* 18 R. I., 707; *Mc-Cord* v. *Atlanta, etc., R. Co.,* 45 S. E., 131; *Seymour* v. *Citizens' Ry. Co.,* 114 Mo., 266; *Geitz* v. *Milwaukee, etc., R. Co.,* 72 Wis., 3071; *Citizens' Street R. Co.* v. *Hoff Bauer,* 56 N. E. Rep., 54; *Augusta R. Co.* v. *Glover,* 2 Am. Neg. Cases, 466; *Buie* v. *Greenville, etc., R. Co.,* 10 South. Rep., 574.


*Williamson & Wells,* for appellee.

The evidence for the plaintiff in this case establishes beyond controversy the following facts:

1. The plaintiff was seated in the car in a place of perfect

safety; and if he had remained in his seat, he would not have sustained an injury.

2. The car was not crowded, and there was no reason for plaintiff to go upon the running board.

3. At the time of plaintiff's injury he was not standing or riding on the running board, but was walking along on it, making his way to a seat, when it was just as easy for him to have entered the car and gone to his seat through the aisle in the usual and safe way.

4. Plaintiff was perfectly familiar with all of the surroundings, and knew that the line of trolley poles was alongside of the track, and he had heard of persons being struck by them.

It is obviously more dangerous to ride on the step or footboard of a car than to occupy a seat inside. Therefore it is the duty of a passenger in the exercise of ordinary prudence in boarding a car, if possible, to place himself in a safe position in the car. *Ashbrook* v. *Fred. Ave. Ry. Co.,* 18 Mo. App., 290; *Clark* v. *Eighth Ave. R. Co.,* 36 N. Y., 135.

If a passenger voluntarily rides on the step or on the footboard of an open car, when there is ample room inside, and is injured by a collision with an obstacle in the street, his negligence is *prima facie* established, and the burden is upon him to rebut the presumption. *Clark* v. *Eighth Ave. R. R. Co., supra; Schoenfeld* v. *Milwaukee City R. R. Co.,* 74 Wis., 433; *Craighead* v. *Brooklyn City R. Co.,* 123 N. Y., 391; Branch on Contributory Neg. (2d ed.), 294.

We do not contend that it is contributory negligence *per se* for a passenger on a street car to ride on the running board of a car. It cannot be said to be negligence as a matter of law, under all circumstances, for a passenger to stand upon the running board. If no seat is furnished and the carrier permits a passenger to ride in that way, the carrier assumes the duty of exercising the care demanded by the circumstances. But the seats in street railroad cars are provided for passengers to occupy, and if there is room to be seated inside the car and no

special reason exists why the passenger should not occupy it, he is negligent as a matter of law in remaining on or going upon the running board, and if, without reasonable cause, he leaves the car or places himself outside of it while in motion, he must assume the risk of so doing. *Thane* v. *Scranton Tract. Co.,* 191 Pa. St., 249; *Coleman* v. *Sec. Ave. R. Co.,* 114 N. Y., 612; *Dixon* v. *Brooklyn, etc.,* 100 N. Y., 171; *Hickey* v. *B. & L. R. Co.,* 14 Allm. (Mass.), 429; *Moody* v. *Springfield St. R. Co.,* 65 N. E. Rep., 29.

The cause which may justify a passenger, without negligence on his part, in leaving his seat and going outside of the car and occupying a position there while the car is running, must be such as impels or induces him to do so—as, for example, where it becomes necessary for his comfort because of the crowded condition of the car for him to do so. *Wood* v. *Brooklyn City R. Co.,* 38 N. Y. Supp., 1077; *Tanner* v. *Buffalo R. Co.,* 72 Hun. (N. Y.), 465; *Martin* v. *Sec. Ave. R. Co.,* 38 N. Y. Supp., 320.

If a passenger is unnecessarily and voluntarily in a place of danger, he is *prima facie* guilty of negligence, and the burden is on him to show that his being in that position was not contributory negligence such as to prevent his recovery. *Solomon* v. *Cent. Park R. Co.,* 31 N. Y. (1 Sweeney), 138; *Ward* v. *Cent. Park R. Co.,* 42 How. Pr. (N. Y.), 289; *Wills* v. *Lynn R. Co.,* 129 Mass., 351; *Downing* v. *Hendric,* 46 Mich., 498; *Archer* v. *Fort Wayne R. Co.,* 87 Mich., 101; *Maguire* v. *Middleaux R. Co.,* 115 Mass., 239.

Argued orally by *George B. Power,* and *C. H. Alexander,* for appellant, and by *Benjamin H. Wells,* for appellee.

HOUSTON, J., delivered the opinion of the court.

This was a suit by appellant (plaintiff below) for the recovery of damages for personal injuries alleged to have been sustained through the negligence of appellee while he was its passenger, said injuries being caused by appellant being struck by,

or coming in contact with, one of the trolley poles on the side of one of the open cars of appellee on its street railway in the city of Jackson. Appellee pleaded the general issue and a plea of contributory negligence. At the conclusion of appellant's evidence, the lower court sustained a motion to exclude all of it, gave a peremptory charge, and entered a judgment dismissing the case, from which plaintiff below prosecuted this appeal.

Able counsel for appellant in their brief say that the only question presented for decision is whether the case showed that appellant was guilty of such contributory negligence as to warrant the court in granting the peremptory instruction.

Of course, it is an elementary principle that, in actions for injuries through negligence, the plaintiff cannot recover if his own negligence or want of ordinary care produced, or even contributed as the proximate cause to produce, the injury complained of; and if the facts shown by the whole testimony for the plaintiff, and all just inferences from those facts, make this clear, then, in such a state of evidence, although the defendant introduce no evidence in support of his plea of contributory negligence, it is not only within the power, but it is the duty, of the court to decide upon the legal effect of the evidence, and to instruct the jury, as a matter of law, that the plaintiff cannot maintain this action. When the facts are not disputed and the inferences or conclusions resulting therefrom are indisputable, the question of contributory negligence is one of law for the court to determine, and not one of fact for the jury. *Railroad Co.* v. *McGowan,* 62 Miss., 682 (52 Am. St. Rep., 205); *Railroad Co.* v. *Alexander,* 62 Miss., 496; *McMurtry* v. *Railroad Co.,* 67 Miss., 601 (7 South. Rep., 401); *Swan* v. *Ins. Co.,* 52 Miss., 704; *Todd* v. *Railroad Co.,* 80 Am. Dec., 49.

Now, the evidence in this case establishes, beyond cavil, controversy, or dispute, that, on the night of the accident, plaintiff and his wife took passage and obtained seats on the car at Livingston Park, returning to their home, near the insane asylum; that, when the car stopped at Spengler's corner, plaintiff, ac-

cording to his own evidence, voluntarily left his seat inside the car, just behind his wife, to speak to a man whom he saw on the rear platform, and who he thought was a friend, about a personal matter. When he arrived at the rear platform, although he ascertained that he was mistaken in the identity of the man, and that he was not the one whom he had left his safe seat to see and converse with regarding a purely personal matter, still, instead of returning to his seat, which the defendant company had provided for its passengers, and which remained empty and awaited him, he engages in a nonbusiness conversation with this stranger. As the car was then standing still, and as he discovered that this was not the friend to whom he desired to speak, which was the sole and only reason assigned for his leaving his seat, he should have returned to it by way of the aisle provided for the purpose, and could have safely done so. But not content with failing to keep his seat, where he admits he would have been perfectly safe, or to return to it while the car was standing, which he could have safely done, even by way of the running board, according to his own testimony, he continued a seemingly idle conversation with this stranger, and waited until the car started and was running rapidly. Then, and not until then, does he begin his journey back to resume his seat; and even at that time, instead of returning to it by way of the inside aisle, specially provided for this specific purpose for him and all passengers, he deliberately, voluntarily, and unnecessarily chooses, without any compulsion, direction, invitation, or knowledge on the part of any employe of appellee company, the more dangerous and extremely hazardous route along the running board on the outside of the car, and one the very side where he admits he knew these trolley posts were, including the one which he was injured by, and although he had at the time heard of somebody being knocked off of the running board by these trolley posts previous to that, somewhere. He further admits that he frequently rode on this North State street car route, he having lived on that street for many years, and he knew of these lines of posts

along this west side of the track, and also knew that it was the
custom of the defendant company to keep the bars or cross-
guards down on the side next to these posts, and had heard that
it was done for the purpose of preventing people from getting
on the running boards and thus protecting them from those
posts.    When asked if he could not have gone up the aisle in
returning to his seat, he finally answered, "I suppose I could.
I don't remember now the condition of things," and admits that
other people were passing and going into the car at that very
time; that he knew of no compelling interest requiring him to go
along this running board, except he must have considered it the
shortest way to his seat, or because it was the most convenient
way.    Plaintiff's witness, Waycaster, swears that there were
plenty of vacant seats, and that he knew of no reason why plain-
tic should not have walked back in the aisle and sat down in the
same seat he had voluntarily left; and his witness, McGee, says
that there was nothing to prevent him from doing this, and if he
had done so, there would have been no danger in the world, so
far as he knew; that he (witness) did not use that running board
because he considered it dangerous; that he thought any pru-
dent man could see that it was a dangerous thing to do; and
that he had heard conductors caution people about getting on
these boards.    In view of all this evidence adduced by the
plaintiff himself, demonstrating his want of the most ordinary
care, we are constrained to agree with the appellant in his state-
ment, relative to how he got hurt, to his own witness, Alexander
Montgomery, who testified that on the night of the injury
appellant said, according to witness' recollection, that it was
his (appellant's) fault, or something to that effect.    His own
evidence making it manifest that his own carelessness con-
tributed as the proximate cause to produce his unfortunate
injury, and thereby sustained the contributory negligence plea
of defendant, there was no other course left for the court than
to instruct the jury that this precluded the possibility of plain-
tiff's recovering damages, under the law.    It is a self-evident

proposition that it was wholly unnecessary for the defendant below to introduce testimony in support of a plea which plaintiff's own evidence fully sustained.   Authorities *supra.*

While this is a case of first impression in Mississippi—this court never having decided the questions here presented for determination—the courts of last resort of other jurisdictions have settled the principles here involved.   As held by numerous authorities, it is too obvious for proof, and therefore requires none to establish the proposition, that it is manifestly more dangerous to be on the running board of a car than to be on the seat—more dangerous even than to be on the platform of the car.   Counsel for appellant concede this, and, with their usual frankness, also concede that there was no absolute necessity for appellant being on the running board at the time he was injured, and that in placing himself on the running board, even for the purpose of passing from one part of the car to another, he assumed the risks of the ordinary perils of that position, and he will be held to have anticipated the dangers probably incident thereto.

Clark, in his Accident Law (2d ed.) Street Railways, sec. 37, "Riding on Running Boards," uses this language: "Although riding on the running board has apparently been attended with rather more danger than riding on the platform or steps, it is nevertheless held that riding in this position is not of itself lack of due care, as a matter of law, and the rule is the same whether the car is a horse car, an electric car, or stage sleigh.   .   .   .   Whether or not the car is crowded is perhaps the most important consideration in determining the question of the passenger's due care.   Where the car is crowded, and the passenger rides on the running board without objection from those in charge of the car, he is held not to be guilty of lack of due care, as a matter of law; while, if there is plenty of room inside, it has been held that the passenger assumes all the risks arising from the position which he chooses to take, and in any event a passenger riding on the running board assumes the risk

of the ordinary perils incident to the position." He cites numerous authorities.

The undisputed evidence in this case is that there "was plenty of room inside," but appellant voluntarily chose to leave his seat, and not only to take his position on the platform, but waited there until the car was running rapidly; and then, instead of returning by way of the aisle, which would have been perfectly safe, he chooses the more dangerous route, on the side where he knew these posts were, etc. He thereby assumed all the risks arising from the position which he chose to take. In *Thane* v. *Scranton Traction Co.,* 191 Pa., 249 (43 Atl., 136; 71 Am. St. Rep., 767), the court says: "The distinction sought to be made between an injury from ordinary risks and from a collision the result of the negligence of the carrier, is not sound. What the passenger took upon himself was the risk of his position from any cause." Beach, in his admirable work on Contributory Negligence (2d ed.), sec. 294, makes the question as to whether or not walking along the side steps or running board of an open car from the rear platform to a seat is contributory negligence depend on whether there was any other means of passing from one end of the car to another—that is, whether or not there was an aisle. Indeed, some of the authorities go to the extent of specifically holding (which it is not necessary to hold in this case) not only that it is the absolute duty of a passenger to go on the inside of a car, if there is any room there, but that in the use of cars of steam railroads the rule admits of no exception which does not rest on necessity, and that, if he does not observe this, he takes all of the risks of his location elsewhere. *Bumbear* v. *Traction Co.,* 198 Pa., 200 (47 Atl., 961), and cases cited.

We do not think that the simple fact that this trolley pole with which plaintiff came in contact was slightly nearer the track than two others just on each side of it proves, or even tends to prove, that said pole was dangerously near the track, or that this shows any gross negligence on the part of defendant. The

other posts might be, and seem to have been, further from the track than was necessary. The evidence shows that it was thirty-three inches, or nearly three feet, from the part or point of the post with which appellant came in contact to the center of the rail next to the post, and there is no evidence whatever to show that this was dangerously near or at all close to the track. And this should not be presumed, assumed, or conjectured in the absence of any evidence from which it can be presumed or assumed or conjectured. The mere fact of the accident having occurred does not even tend to prove it. Indeed, so far as the decisions that we have been able to find throw any light upon this question, this trolley pole is a greater distance from the track than is usual of necessity in street railway construction. In *Craighead* v. *Brooklyn City R. Co.,* 123 N. Y., 391 (25 N. E., 387), the intervening space between the outside steps of an open car, where the plaintiff was passing when the accident occurred, and the car which struck him, was only seventeen inches; and, although the space between the tracks sometimes varied a few inches more or less, the court held this was not negligence on the part of the railway company, and that defendant was not bound so to construct its tracks that it would be impossible for a passenger to be struck by another car when he was standing on the outside of an open car, and said that "the body of the plaintiff must, with reference to the car, have been at a most extraordinary and unusual angle at the time of the accident in order that it should have occurred at all." It further held that, although the plaintiff was talking to the conductor at the time, it was no negligence on the conductor's part in failing to prevent plaintiff from going on the steps, or in not warning him of any possible danger which might arise therefrom. In the instant case the smallest space was thirty-three inches, and there is no pretense of proof that the conductor or any agent of appellee knew anything about appellant's walking or intending to walk on the running board, or even as to his being on the platform. *Hesse, Adm'r,* v. *Meriden Traction Co.,*

75 Conn., 571 (54 Atl., 299), was a case where plaintiff's decedent, who was a passenger on a trolley car, might have stood between the seats, but voluntarily stood on the running board, and had ridden some distance when he was struck by a pole only four and one-half inches from same, and leaning towards the track.

Nor do we think that the fact that the guard rail or bar was up, which appellant knew was ordinarily kept down along the side next to the posts to protect from the posts, was an invitation to him to expose himself to the danger from which the bar, when down, was intended to protect. If he understood it to be such an invitation, he should not have accepted it. He knew the posts were there. He knew, if from nothing else, at least from the customary use of the bar, that they were dangerous to any one on the running board, and, to use his own language, "had heard of somebody being knocked off by posts previous to that, somewhere." He was guilty of negligence in exposing himself, without cause and without the procurement of appellee, to an obvious danger, and was none the less guilty of such negligence simply because the servants of appellee did not fence him off from it. In the case of *Indianapolis R. R.* v. *Rutherford* (Ind.), 92 Am. Dec., 336, the court held that the duty of the carrier does not extend to barricading its cars and imprisoning its passengers so as to prevent them by their recklessness and folly from voluntarily exposing themselves to needless perils or obvious dangers. Such a doctrine would give power to railway officials to so restrain the liberty of their passengers in every respect that they could not by any act of their own put themselves in unnecessary danger, for such a power must necessarily exist if the duty to exercise it exists. The obligation to answer in damages cannot be separated from the authority to do what is necessary to avoid liability. Carriers have not, and ought not to have, any such powers, and hence no liability results. Their passengers are not their slaves. Though passengers, they are nevertheless free men. *Sharkey* v. *Street Railway Co.,*

84 Md., 163 (34 Atl., 1130), was a case strikingly similar to
the instant case, and the court held (1) that the deceased was
guilty of such contributory negligence, as a matter of law, as
to preclude a recovery; (2) that it was not shown that the posi-
tion of the poles between the tracks was unusual and dangerous
in railway construction; (3) that it was not negligence on the
part of defendant not to have a guard rail on the side of the car
next to the poles. To the same effect, see Clark's Accident Law
(2d ed.) Street Railways, "Riding on Running Boards," sec.
37. On the case generally, see authorities *supra,* and *Todd* v.
*R. Co.,* 80 Am. Dec., 49; *Clark* v. *St. Ry.,* 36 N. Y., 135 (93
Am. Dec., 495); *Ashbrook* v. *Ry. Co.,* 18 Mo. App., 290;
*Schoenfeld* v. *Ry. Co.,* 74 Wis., 433 (43 N. W., 162); *Cole-
man* v. *Ry.,* 114 N. Y., 612 (21 N. E., 1064); *Woodroffe* v.
*Ry. Co.,* 201 Pa., 521 (51 Atl., 324; 88 Am. St. Rep., 827);
*Mann* v. *Traction Co.* (Pa.), 34 Atl., 572; *Bradley* v. *Ry. Co.,*
90 Hun., 419 (35 N. Y. Supp., 918); *Dixon* v. *Ry. Co.,* 100
N. Y., 171 (3 N. E., 65); *Wills* v. *R. Co.,* 129 Mass., 351;
*Moody* v. *Ry. Co.* (Mass.), 65 N. E., 29; *Tanner* v. *Ry. Co.,*
72 Hun., 465 (25 N. Y. Supp., 242); *Martin* v. *Ry. Co.*
(Sup.), 38 N. Y. Supp., 220; *Downey* v. *Hendrie,* 46 Mich.,
498 (9 N. W., 828; 41 Am. St. Rep., 177); *Archer* v. *R. Co.,*
87 Mich., 101 (49 N. W., 488); *Maguire* v. *R. Co.,* 115 Mass.,
239.

We deem the second assignment of error also untenable.

*Affirmed.*